Filed 3/14/16  P. v. Gonzales CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H041860 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1223008) |
| v. | |
| ALEJANDRO GONZALES, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

After a court trial, defendant Alejandro Gonzales was convicted of 19 offenses, including carjacking (Pen. Code, § 215),[1] resisting a peace officer and causing serious bodily injury to the officer (§ 148.10, subd. (a)), evading a police officer and causing serious bodily injury (Veh. Code, § 2800.3), four counts of assault with a deadly weapon, a vehicle, upon a peace officer (§ 245, subd. (c)), and four counts of resisting or deterring an officer (former § 69).  The court also found true various allegations as to certain offenses, including that defendant personally used a deadly and dangerous weapon, a vehicle (§ 12022, subd. (b)(1)).  The trial court sentenced defendant to 27 years in prison, which included consecutive sentences for four counts of assault with a deadly weapon upon a peace officer and four counts of resisting or deterring those same four officers.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

On appeal, defendant contends that his convictions for resisting a peace officer and causing serious bodily injury to the officer (§ 148.10, subd. (a)) and evading a police officer and causing serious bodily injury (Veh. Code, § 2800.3) must be reversed because there is insufficient evidence that the police officer, Pierre Vida, suffered serious bodily injury. Second, defendant contends that, because he was punished for four counts of assault with a deadly weapon upon four peace officers (§ 245, subd. (c)), the court should have stayed the sentences for the four counts of resisting or deterring those same four officers (former § 69) pursuant to section 654, as the assaults were the means by which he resisted or delayed the officers. Third, defendant contends that a clerical error in the abstract of judgment should be corrected.

For reasons that we will explain, we determine that the sentences for the resisting offenses (former § 69) should have been stayed pursuant to section 654. Accordingly, we will reverse the judgment and remand the matter for resentencing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged by information with the following 20 counts: attempted premeditated murder of a peace officer (§§ 664, subd. (f), 187, 189; count 1); five counts of assault with a deadly weapon, a vehicle, upon a peace officer (§ 245, subd. (c); counts 2, 7, 10, 13 & 16); four counts of hit and run resulting in injury (Veh. Code, § 20001, subds. (a) & (b)(1); counts 3, 8, 11 & 14); carjacking (§ 215; count 4); second degree robbery (§§ 211, 212.5, subd. (c); count 5); mayhem (§ 203; count 6); four counts of resisting or deterring an officer (former § 69; counts 9, 12, 15 & 17); resisting a peace officer and causing serious bodily injury to the officer (§ 148.10, subd. (a); count 18); evading a police officer and causing serious bodily injury (Veh. Code, § 2800.3; count 19); and reckless driving while attempting to elude a peace officer (*id.*, § 2800.2, subd. (a); count 20). The information further alleged as to certain counts that defendant personally used a deadly and dangerous weapon (§§ 667, 1192.7, 12022, subd. (b)(1)), that he personally inflicted great bodily injury (§§ 667, 1192.7, 12022.7, subd. (a)), and

2

that the victim of the carjacking, robbery, and mayhem offenses was 65 years old or older (§ 667.9, subd. (a)). Defendant waived his right to a jury trial.

## A. *The Court Trial*

### 1. The carjacking

The 68-year-old driver of a large Yukon SUV was at a gas station in the late morning in January 2012. As he opened the driver's side door to get inside the SUV, defendant came up from behind and grabbed him. Defendant put a metal object to the victim's throat and demanded the keys to the SUV. The victim resisted but defendant attacked the victim, including by cutting the victim's face, cutting off the end of the victim's thumb, punching the victim, knocking the victim to the ground, and kicking the victim in the head. Defendant took the victim's keys and quickly drove off in the SUV.

### 2. The collision with Officer Gillies

Paul Gillies, who was a San Jose police officer at the time, was one of the officers who responded to the gas station. He later parked his vehicle, a marked police car, on the side of the road about a half a mile from the gas station in order to use his police computer. The roadway was "extremely wide," with two lanes of traffic in each direction and an "extra wide shoulder" of approximately 15 to 20 feet. Officer Gillies's car was parked on the shoulder and not obstructing traffic.

Shortly thereafter, about 40 minutes after the carjacking took place, defendant was driving the SUV on the same road and in the same direction as Officer Gillies's parked car. Defendant was initially traveling in the lane closest to the center median. Upon approaching Officer Gillies's car, defendant turned right and crashed into the officer's driver's side door with the right front corner of the SUV. A witness testified that the SUV was traveling about 15 miles per hour and "slowly collided" into the police car. After a few seconds, defendant backed up the SUV and then continued driving in the same direction as he had originally been traveling.

3

Officer Gillies was seated in the driver's seat at the time of the collision and his attention had been directed to his right side. He testified that the collision sounded almost like an explosion. The driver's side door of the police car was pushed in towards the officer's lap, and he was covered in glass and debris. Officer Gillies used his police radio to notify dispatch. The fire department had to remove the driver's side door in order to pull the officer out of the car. Officer Gillies was injured as a result of the incident and was out from work for a period of time.

### 3. The collision with Officer Ramirez

San Jose Police Officer Oscar Ramirez was driving a marked police car when he joined the search for the SUV that had been carjacked and that had struck Officer Gillies's police car. While Officer Ramirez was driving northbound on a street, he saw the SUV traveling southbound. The SUV had damage to the right headlight and right fender.

As the SUV approached, it quickly crossed into the northbound lane and headed directly towards Officer Ramirez's car. The officer immediately drove to the right to avoid a head-on collision and pulled up behind a parked vehicle. The SUV followed Officer Ramirez's car to the shoulder and struck the left side of the officer's car, primarily hitting the driver's side door and shattering the window. After the SUV hit the police car, the SUV continued traveling southbound.

Prior to impact, Officer Ramirez did not have his car's lights or sirens on. After impact, the officer notified "communications" that he had been struck and that the SUV had continued southbound. The impact caused a moderate amount of damage to Officer Ramirez's car. The car was pinned against the curb, and the officer was unable to open the driver's side door. Officer Ramirez sustained injuries as a result of the incident and was out from work for a period of time.

4

### 4. The collision with Officer Kirby

Matthew Kirby, who was a San Jose police officer at the time and driving a marked police car, activated the car's emergency red lights and sirens upon hearing about the first patrol car, Officer Gillies's, being hit. While Officer Kirby was traveling northbound, he saw the SUV approaching from the opposite direction. The SUV veered into Officer Kirby's lane so the two vehicles were approaching head-on. The officer made an "evasive movement" with his car to get out of the SUV's direction of travel. When the two vehicles were almost passing each other, the SUV swerved into the officer's car and collided with the rear quarter panel of the driver's side of the police car. At the time of the collision, both the SUV and the police care were traveling approximately 25 miles per hour.

After the impact, the officer tried to turn his car around to follow the SUV, but his car was disabled because the fuel shut-off switch had been hit. He broadcasted the incident and the SUV's last known direction of travel. Officer Kirby sustained injuries as a result of the collision.

### 5. The collision with Officer Vasquez

After hearing that Officer Gillies had been struck by the vehicle involved in the carjacking, San Jose Police Officer Manny Vasquez drove his marked police car to the area. He saw the SUV approaching from the opposite direction at a high rate of speed with two police cars behind it. Officer Vasquez positioned his vehicle so it was facing head-on with the SUV and so that it blocked a crosswalk to prevent pedestrians from entering it. Defendant continued driving towards the officer's car as if he was going to hit the police car head-on, but at the last minute defendant moved over. Defendant struck a portion of the front fender of the officer's car, but the "main impact" was on the rear quarter panel of the passenger's side of the officer's car. The impact "swung" the police car around a bit. Officer Vasquez waited for the other police cars to pass and then joined

in the pursuit. The officer suffered an injury due to the incident and was off from work for a period of time.

### 6. Officer Vida's and Officer Hoyt's attempts to stop defendant

At some point, San Jose Police Officer Pierre Vida, who was driving a marked police car, saw the SUV being driven by defendant. Defendant was driving in the middle of the road as he and Officer Vida traveled towards each other. To avoid being hit, Officer Vida had to maneuver his car to the left and change his speed. After defendant drove past him, the officer followed in pursuit.

San Jose Police Officer William Hoyt, who was also driving a marked police car, joined in the pursuit. Officer Vida and Officer Hoyt each tried to stop the SUV by hitting it with their cars but the SUV continued traveling. The officers used their cars again to strike the SUV, and ultimately the SUV was stopped. Defendant did not comply with verbal commands and tried to start the SUV, but he was eventually arrested. The air bags in the SUV did not deploy during the entire incident.

During Officer Hoyt's attempts to stop the SUV, he suffered an injury and was later out from work for a period of time.

As a result of the incident, Officer Vida suffered a cut and swelling on his left ring finger. His finger was in a splint for approximately two months as a result. He also suffered pain in his back and legs. At the time of trial more than two years after the incident, the officer's back was "still injured" and he was still in pain. The officer missed work because of the injuries. Although he was cleared to go back to full duty at some point, he worked for approximately two weeks before having a relapse. At the time of trial he was still taking medication to help with the pain.

Defendant did not testify at trial. A psychologist testified as an expert witness for the defense regarding defendant's brain impairment and intelligence level, including regarding a deficiency in his information processing speed and significant impairments in his executive functioning.

6

**B.** *The Verdicts*

The trial court found defendant not guilty of count 1 (attempted premeditated murder of a peace officer). The court found defendant guilty of all the remaining counts (counts 2-20) and found true the attached enhancements.

**C.** *Sentencing*

The probation report prepared for the sentencing hearing recommended that defendant receive consecutive sentences for the counts involving assault with a deadly weapon upon Officers Ramirez, Kirby, Vasquez, and Vida, as well as consecutive sentences for the counts involving resisting or deterring those same officers. The probation report recommended that the sentences for hit and run resulting in injury regarding Officers Ramirez, Kirby, and Vasquez be stayed pursuant to section 654.

The prosecutor contended that punishment should not be stayed under section 654 for the assault, resisting, or hit and run counts because defendant had multiple intents in committing the various offenses. Defendant contended that all the offenses were committed as part of his attempt to get away from the officers and that therefore the sentences for the resisting counts and the hit and run counts should be stayed pursuant to section 654.

The trial court implicitly determined that section 654 did not preclude punishment for the assault counts and the resisting counts because it imposed consecutive terms for each of those counts. The court stayed the sentences for the hit and run counts pertaining to Officers Ramirez, Kirby, and Vasquez pursuant to section 654. The court ultimately sentenced defendant to a total term of 27 years in prison.

### III. DISCUSSION

**A.** *Sufficiency of the Evidence Regarding Serious Bodily Injury to Officer Vida*

Defendant was convicted of resisting a peace officer and causing serious bodily injury to the officer (§ 148.10, subd. (a); count 18) and evading a police officer and causing serious bodily injury (Veh. Code, § 2800.3; count 19). Both counts pertained to

Officer Vida, who was one of the officers who hit the SUV with his police car in an effort to stop the SUV.

Defendant contends that there was insufficient evidence Officer Vida suffered serious bodily injury, and that therefore defendant's convictions on counts 18 and 19 violated his federal and state constitutional rights. According to defendant, although the officer's injuries were "unpleasant and painful, the injuries [the officer] suffered did not rise to the level of a significant or substantial physical injury or serious impairment."

The Attorney General contends that there is substantial evidence to support the finding that Officer Vida suffered serious bodily injury.

### 1. The standard of review

"In considering a challenge to the sufficiency of the evidence . . . we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

"An appellate court must accept logical inferences that the [factfinder] might have drawn from . . . circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.) " 'A reasonable inference, however, "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence." ' [Citation.]" (*People v. Raley* (1992) 2 Cal.4th 870, 891.)

8

## 2. Serious bodily injury

Defendant was convicted of violating section 148.10 and Vehicle Code section 2800.3.  Both sections provide for punishment where, among other elements, the defendant's conduct proximately causes "serious bodily injury."  (§ 148.10, subd. (a); Veh. Code, § 2800.3, subd. (a).)  Both sections also provide that serious bodily injury has the same meaning as defined in section 243, subdivision (f)(4).  (§ 148.10, subd. (d); Veh. Code, § 2800.3, subd. (d).)

Section 243, subdivision (f)(4) provides that serious bodily injury "means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement."  In determining whether a victim suffered serious bodily injury, the degree of injury must be considered.  (See *People v. Hawkins* (1993) 15 Cal.App.4th 1373, 1375.)  A broken jaw that must be wired shut for three weeks may be substantial evidence of a serious bodily injury.  (*People v. Fosselman* (1983) 33 Cal.3d 572, 579.)

"[T]he determination of [serious or] great bodily injury is essentially a question of fact, not of law.  ' "Whether the harm resulting to the victim . . . constitutes [serious or] great bodily injury is a question of fact for the jury.  [Citation.]  If there is sufficient evidence to sustain the jury's finding of [serious or] great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding." '  [Citations.]"  (*People v. Escobar* (1992) 3 Cal.4th 740, 750, fn. omitted; see *People v. Sloan* (2007) 42 Cal.4th 110, 117 [serious bodily injury " 'is the essential equivalent' " of great bodily injury]; *People v. Wade* (2012) 204 Cal.App.4th 1142, 1149-1150; § 12022.7, subd. (f) [great bodily injury is "a significant or substantial physical injury"].)

### 3. Analysis

In this case, Officer Vida testified that he suffered pain in his back and legs, and he had a cut and swelling on his left ring finger. He went to the emergency room, where he was given medication for his back, an x-ray was taken of his finger, and he was given a splint which prevented the finger from bending. The officer used the splint for approximately two months. During that timeframe, he experienced hand pain and was not able to fully use his left hand.

Regarding his back pain, Officer Vida underwent acupuncture and chiropractic treatment, among other therapy. At trial in April 2014, more than two years after the incident, Officer Vida testified that his back was "still injured" and he was still in pain. The officer missed work because of the injuries. Although he was cleared to go back to full duty at some point, he only worked for approximately two weeks before having a relapse. At the time of trial he was taking Bayer "every so often." He was previously taking prescription medication to help with the pain and inflammation.

Substantial evidence supports the finding that Officer Vida suffered a "serious impairment of [his] physical condition," including a "protracted loss or impairment of function of [a] bodily member or organ." (§ 243, subd. (f)(4).) The officer's finger was in a splint for approximately two months during which time he had pain and could not fully use his hand. He also injured his back to such an extent that he was still injured and in pain more than two years after the incident, he needed and had tried different types of therapy, and he was still taking medication. Indeed the officer was injured to such an extent that he was only able to work for two weeks before suffering a relapse. The injuries the officer suffered and his continued inability to work more than two years after the incident give rise to a reasonable inference that the officer's physical condition was seriously impaired. (§ 243, subd. (f)(4).) In view of the evidence in this case, we find distinguishable the cases cited by defendant in which the victims suffered only minor or temporary injuries or otherwise failed to demonstrate the seriousness of the impairment.

10

(See *People v. Martinez* (1985) 171 Cal.App.3d 727, 735 [ " 'minor laceration' " or " 'little stab' " wound that did not necessitate hospital visit was insufficient evidence of great bodily injury]; *People v. Covino* (1980) 100 Cal.App.3d 660, 665, 667 [redness on the victim's chest and back and complaint of neck pain months later did not establish great bodily injury].)

Accordingly, we conclude that substantial evidence supports the finding that Officer Vida suffered serious bodily injury within the meaning of section 148.10, subdivision (a) (resisting a peace officer and causing serious bodily injury to the officer) and Vehicle Code section 2800.3 (evading a police officer and causing serious bodily injury).

**B.  *Section 654***

Relevant to this appeal, defendant drove the SUV into the cars of Officers Ramirez, Kirby, and Vasquez, and he nearly hit Officer Vida's car.  With respect to *each* of these four officers, defendant was convicted of one count of assault with a deadly weapon, a vehicle, upon a peace officer (§ 245, subd. (c); counts 7, 10, 13 & 16), and one count of resisting or deterring that same officer with personal use of a deadly and dangerous weapon, a vehicle (former § 69; § 12022, subd. (b)(1); counts 9, 12, 15 & 17). The trial court sentenced defendant to consecutive 16-month terms for each of the four assault counts, and consecutive eight-month terms for each of the four resisting counts plus four-month terms for the attached personal use enhancement.

Defendant contends that pursuant to section 654, he may not be punished for both assault with a deadly weapon upon a peace officer and resisting or deterring the same officer.  He argues that "each crime was part of one indivisible course of conduct and was part of one criminal objective, namely to resist or deter the officers," and that "the assault with the SUV was the means by which [he] resisted or delayed the officers from arresting him."  Defendant contends that therefore he "can only be punished for the more serious

11

crime of assault with a deadly weapon as to each officer and the punishment for the four resisting or delaying an officer convictions must be stayed."

The Attorney General acknowledges that "each separate assault and resisting consisted of the same physical act." The Attorney General contends, however, that "the evidence showed that [defendant] had multiple, independent criminal objectives in colliding with the officers' vehicles." Specifically, defendant wanted to not only "terminate the officers' pursuit by disabling their vehicles," but he "also wanted to inflict injury on the officers." The Attorney General contends that it was therefore proper to impose consecutive sentences for the assault offense and resisting offense as to each police officer.

## 1. Background

At the close of evidence, the prosecutor argued that defendant committed assault with a deadly weapon, a vehicle, upon Officers Ramirez, Kirby, Vasquez, and Vida (§ 245, subd. (c)), based on evidence that defendant had driven the SUV at each of the four officers and actually struck three of them. The prosecutor relied on the same act by defendant with respect to each officer – driving at the officer and striking or almost striking each officer's car – to argue that defendant committed the offense of resisting or deterring with respect to each officer (former § 69).

Defendant was subsequently convicted of, among other offenses, four counts of assault with a deadly weapon, a vehicle, upon Officers Ramirez, Kirby, Vasquez, and Vida (§ 245, subd. (c); counts 7, 10, 13 & 16), four counts of resisting or deterring those same four officers with personal use of a deadly and dangerous weapon, a vehicle (former § 69; § 12022, subd. (b)(1); counts 9, 12, 15 & 17), and three counts of hit and run resulting in injury regarding Officers Ramirez, Kirby, and Vasquez (Veh. Code, § 20001, subds. (a) & (b)(1); counts 8, 11 & 14).

The probation report prepared for the sentencing hearing recommended that defendant receive consecutive sentences for these particular assault counts and resisting

12

counts, and that the sentences for these particular hit and run counts be stayed pursuant to section 654. The probation officer believed that the resisting counts involved "the same general conduct of fleeing from the scene" as the hit and run counts.

The prosecutor filed a sentencing memorandum contending that punishment should not be stayed under section 654 for the assault counts and the resisting counts because defendant "had multiple distinct intents." According to the prosecutor, "defendant not only wanted to deter or prevent the officers from the performance of their duties, . . . he also wanted to injure them." The prosecutor argued that Officers Ramirez and Kirby took evasive maneuvers to avoid being hit by defendant, but defendant turned his vehicle to ensure that he struck each officer's car, "specifically aiming for where the officers were seated. Had he simply wished to disable the vehicles he could have struck the police car in almost any other place." Regarding Officer Vasquez, the prosecutor observed that the officer was actually parked, attempting to protect pedestrians, and "not fully engaged in the pursuit," but defendant "still made a deliberate turning maneuver to approximate a head on collision, then . . . swerved at the last minute to strike the rear passenger side." The prosecutor contended that defendant's actions regarding the officers went "beyond simply trying to end the pursuit." The prosecutor also argued that the sentences for the hit and run counts should not be stayed.

At the sentencing hearing, the trial court indicated that there had been "a lot of disagreement" as to which counts section 654 applied. The court then heard argument from the parties. The prosecutor contended that defendant "was not simply driving his car straightforward as fast as he could to get away. . . . [Defendant] deliberately drove his car into multiple police vehicles when they took evasive action. He took action to make sure that he was able to collide with their car and do the maximum amount of damage."

Defendant contended that after the carjacking, there was an "indivisible transaction." His "entire purpose" in evading the police officers and assaulting them by

13

running into their cars was to "get away because he saw all these police officers chasing him." "He was trying to get away from the officers," and "[h]e committed [the assaults] in the process to disable cars to prevent them from continuing to follow him." He argued that therefore the sentences on the counts for resisting or deterring an officer should be stayed pursuant to section 654. Defendant further argued that, as recommended by the probation officer, the hit and run counts should be stayed pursuant to section 654.

The trial court stated that, "[a]fter going around and around and hearing the arguments," the court had come "full circle and decided that the probation report [made] the correct recommendations regarding the issues of what should be stayed and what should not be stayed." The court implicitly determined that section 654 did not preclude punishment for the assault counts and the resisting counts, as it imposed consecutive terms for each of those counts. The court stayed the sentences on the hit and run counts pertaining to Officers Ramirez, Kirby, and Vasquez pursuant to section 654.

## 2. General legal principles

Relevant to his contentions on appeal, defendant was convicted of four counts of assault with a deadly weapon, a vehicle, upon a peace officer (§ 245, subd. (c)). A defendant is guilty of assault under section 245, subdivision (c) if the defendant "commits an assault with a deadly weapon or instrument, other than a firearm" upon a "peace officer . . . engaged in the performance of his or her duties," and the defendant "knows or reasonably should know that the victim is a peace officer" so engaged.

Defendant was also convicted of four counts of resisting or deterring an officer with personal use of a deadly and dangerous weapon, a vehicle (former § 69; § 12022, subd. (b)(1)). Regarding the offense of resisting or deterring an officer, former section 69 stated at the time of defendant's offenses in 2012: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable . . . ." (Stats.

14

2011, ch. 15, § 235; see now § 69, subd. (a).) The California Supreme Court has explained that "section 69 'sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty.' [Citation.]" (*People v. Smith* (2013) 57 Cal.4th 232, 240 (*Smith*).)[2]

Section 12022, subdivision (b)(1) provides a sentencing enhancement for "[a] person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony." In order to find the allegation true, " 'a fact finder must conclude that, during the crime or attempted crime, the defendant himself or herself intentionally displayed in a menacing manner or struck someone with an instrument capable of inflicting great bodily injury or death. [Citations.]' [Citation.]" (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1197.)

Section 654, subdivision (a) provides in pertinent part, "*An act* or omission *that is punishable in different ways by different provisions of law* shall be punished under the

---

[2] The California Supreme Court has further explained the two different ways of violating section 69 as follows: "The first way of violating section 69 'encompasses attempts to deter *either* an officer's *immediate* performance of a duty imposed by law *or* the officer's performance of such a duty at some time *in the future*.' [Citation.] The actual use of force or violence is not required. [Citation.] Further, 'the statutory language [of the first clause of section 69] does not require that the officer be engaged in the performance of his or her duties at the time the threat is made. . . . Thus, for example, a person who telephones an off-duty officer at his or her home and threatens to kill the officer if he or she continues to pursue a lawful investigation the following day or week may be convicted of the first type of offense under section 69, even though the officer was not engaged in the performance of his or her duties at the time the threat was made.' [Citation.]

"The second way of violating section 69 expressly requires that the defendant resist the officer 'by the use of force or violence,' and it further requires that the officer was acting lawfully at the time of the offense. [Citation.]" (*Smith*, *supra*, 57 Cal.4th at pp. 240-241.)

provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (Italics added.)

In *People v. Jones* (2012) 54 Cal.4th 350 (*Jones*), the California Supreme Court explained that "[s]ection 654 prohibits multiple punishment for a *single physical act* that violates different provisions of law." (*Jones*, *supra*, at p. 358, italics added.) In contrast, in cases where "there has been a *course of conduct* rather than a single criminal act," courts have employed an " 'intent and objective' test" in determining whether section 654 applies. (*Jones*, *supra*, at p. 359, italics added; accord, *People v. Newman* (2015) 238 Cal.App.4th 103, 111-112 (*Newman*).) Under the intent and objective test in cases involving a course of conduct, if the defendant " ' "entertained multiple criminal objectives which were independent of and not merely incidental to each other," ' " then section 654 does not bar multiple punishment. (*Newman*, *supra*, at p. 112.)[3] Significantly, the California Supreme Court clarified in *Jones* that in a *single-act case*, it is "better to rely on section 654's actual language in resolving" the case, and that a single-act case "should be decided on the basis that it involves a single act or omission that can be punished but *once*." (*Jones*, *supra*, at p. 360, italics added.)

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) "A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence. [Citation.]" (*People v. Brents* (2012) 53 Cal.4th 599, 618.) In conducting the substantial evidence analysis, "[w]e review the trial court's determination in the light most favorable to the respondent and

---

[3] Section 654 also does not bar multiple punishment "for an 'act of violence' against multiple victims. If the defendant has engaged in an act of violence against two or more people, he may be punished separately for each crime. [Citations.]" (*Newman*, *supra*, 238 Cal.App.4th at p. 112.)

presume the existence of every fact the trial court could reasonably deduce from the evidence. [Citation.]" (*People v. Jones*, *supra*, at p. 1143.)

### 3. Analysis

In argument at the close of evidence, the prosecutor relied on the *same act* by defendant as the basis for each assault with a deadly weapon offense and the corresponding resisting or deterring offense for a given officer: defendant's act of driving at the officer's car and striking or almost striking the car. Indeed, in this appeal the Attorney General acknowledges that "each separate assault and resisting consisted of *the same physical act*." (Italics added.) In other words, defendant's act of driving and striking, or almost striking, a car as to each officer was "a single physical act that violate[d] different provisions of law" (*Jones*, *supra*, 54 Cal.4th at p. 358) and was punished "by different provisions of law" (§ 654), specifically as an assault with a deadly weapon upon a peace officer (§ 245, subd. (c)) and resisting or deterring an officer (former § 69). However, "[b]ecause defendant's convictions [for assault and for resisting as to each officer] were based on a single act, section 654 prohibits multiple punishment" (*Jones*, *supra*, at p. 360), regardless of whether defendant harbored one intent or multiple intents and objectives in driving and striking, or almost striking, each officer's car. (*Jones*, *supra*, at pp. 358, 359-360; *Newman*, *supra*, 238 Cal.App.4th at pp. 111-112.)

Accordingly, we conclude that defendant may not be punished for both the assault offense and the resisting or deterring offense as to the same officer, because the *single act* of driving by defendant formed the basis for each offense. The punishment for the resisting or deterring offense as to each officer must therefore be stayed pursuant to section 654.

We observe that the probation report recommended and the trial court ordered that the punishment for the hit and run counts (Veh. Code, § 20001, subds. (a) & (b)(1)) pertaining to Officers Ramirez, Kirby, and Vasquez be stayed pursuant to section 654. "Vehicle Code section 20001, subdivision (a) states: 'The driver of a vehicle involved in

17

an accident resulting in injury to a person, other than himself or herself, or in the death of a person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004.' Vehicle Code sections 20003 and 20004 essentially require drivers to render reasonable aid to an injured person and furnish identification information. 'In lay terms, section 20001, subdivision (a) describes the crime of hit-and-run.' [Citation.]" (*People v. Cowart* (2015) 238 Cal.App.4th 945, 950-951, fns. omitted.)

We will remand the matter to give the court the opportunity to resentence defendant. Our holding in this appeal is limited to the determination that section 654 precludes punishment for the resisting or deterring offenses. We express no opinion on whether the punishment on other counts should be stayed.

### C. *Abstract of Judgment*

Defendant contends that the abstract of judgment incorrectly indicates that he was sentenced to one year four months on count 9, resisting or deterring an officer (former § 69). Because we are remanding the matter for resentencing, we need not consider the issue.

## IV. DISPOSITION

The judgment is reversed and the matter is remanded for resentencing. In resentencing defendant, any sentence imposed on counts 9, 12, 15, and 17 (resisting or deterring an officer with personal use of a deadly and dangerous weapon; former Pen. Code, § 69; Pen. Code, § 12022, subd. (b)(1)) must be stayed pursuant to Penal Code section 654.

18

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

MIHARA, J.