[Crim. No. 19210. First Dist., Div. Three. Jan. 4, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT HENRY COVINO, Defendant and Appellant.

COUNSEL

Gregory R. Marshall, under appointment by the Court of Appeal, Klarenbach & Marshall for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Ann K. Jensen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FEINBERG, J.**—Robert Henry Covino was charged by information with (count I) assault with intent to commit murder (Pen. Code, § 217), (count II) assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)), and (count III) assault with intent to commit a felony (Pen. Code, § 221), to wit: forcible oral copulation (Pen. Code, § 288a, subd. (c)), upon Shannon M., a 23-year-old woman.

Trial was by jury which found appellant guilty of counts II and III. A mistrial was declared as to count I, the jury being unable to agree, and it was ultimately dismissed.

Appellant was sentenced to an aggravated term of four years on count II and an aggravated term of three years on count III; the execution of the latter term was stayed.

The evidence showed that appellant, late at night, picked up Shannon in his automobile and drove her to a secluded but well lighted area. There he proposed that she orally copulate him, but she refused. He threatened to kill her unless she agreed to perform the act and began to strangle her. She tried to dissuade appellant and fought him. Suddenly he released her. Sheriff's deputies had noticed appellant's headlights and stopped to investigate, training their headlights, spotlight, and flashlight on him. A deputy observed Shannon lying between the bucket seats of the automobile and appellant straddling her, one knee in each seat. He was squeezing her neck, his thumbs in the area of her larynx, and she appeared to be gasping and choking, her tongue protruding

about an inch and her eyes bulging and her face red. The deputy pulled appellant out of the car. Shannon emerged, shaking and crying. She said that appellant tried to kill her. Photographs taken at the scene showed redness on her chest and back. Months later she complained of pain in her neck.

Appellant's defense was that Shannon had accepted his offer of a ride and responded to his inquiry, whether she "had time to play around," with the suggestion that they find some dark place. There, according to his testimony, they engaged in sexual dalliance, eventually finding themselves wedged between the bucket seats. When the deputies arrived, they struggled to get up. He denied demanding a sex act or choking the woman. Appellant produced one witness who had seen Shannon shortly before he picked her up and who observed that she appeared to be in want of male companionship and "acting strange." Appellant testified, too, that he had been drinking heavily that evening. Appellant was prepared to present the testimony of three other witnesses who were acquainted with Shannon and were of the opinion that she was "loose" or "very forward," based on instances of her hugging and kissing with comparative strangers, expressing a sexual interest in various men, and soliciting rides from them. The proffered testimony was excluded as not qualifying under Evidence Code section 1103 and also on the grounds, under section 352, "that the admission of such evidence would only create issues that would be misleading to the jury and necessitate undue consumption of time."

On appeal, appellant contends that there was (1) error in the exclusion of the testimony as to Shannon's character, (2) error or omission in instructions defining assault with intent to commit great bodily injury, (3) insufficient evidence of that offense, (4) unconstitutionality of the statute defining that offense, as applied, (5) error in instructions concerning the intentional element of that offense, (6) insufficient evidence of assault with intent to commit forcible oral copulation, and (7) an improper finding of "aggravating circumstances" upon which the imposition of upper terms was based. Only the last of these contentions has merit, but a remand for resentencing, not reversal, is required.

### 1. *Exclusion of character evidence*

█ The evidence proffered by appellant fell into three categories: (a) that Shannon somewhat aggressively sought the attention of men,

(-b) that she hugged and kissed various men in a public place, and (c) she had encouraged men to take her home and had gone home with them.

If there were an issue in the case as to whether Shannon had willingly accompanied appellant, then this evidence would have been highly probative. But there was no such issue.

As to the central issues in the case, whether appellant demanded that Shannon orally copulate him and assaulted her when she refused, the proffered evidence had no bearing at all.

The proffered evidence, if believed, did have a slight tendency to prove a contested issue, that is, whether Shannon, as appellant testified, responded positively to his sexual advances. The evidence was therefore admissible under Evidence Code section 1103, subdivision (1)(a). It was not inadmissible under subdivision (2)(a) of that section, because the assault here was not with intent to commit rape (Pen. Code, § 261), or rape in concert (Pen. Code, § 264.1).

A trial court has discretion to exclude proffered evidence under Evidence Code section 352 even though it is admissible. Considering the slight probative value of the evidence as against the possibility of confusing the issues or consuming an undue amount of time, we cannot say that the trial court erred in rejecting the proffered evidence. But even if the trial court did err, it does not appear that the error was prejudicial. At best, the proffered evidence, if believed, only showed that she liked men, frequently kissed and hugged them and accepted rides home from them. She admittedly accepted a ride from appellant. But the fact that she had kissed and hugged other men is not probative of whether she accepted the sexual advances of appellant, particularly considering the sexual act appellant desired.

2. *Instructions on assault by means of force likely to produce great bodily injury*

■ Appellant contends that the jury should have been instructed that oral copulation is not great bodily injury. This contention is based on the mistaken assumption that assault by means of force likely to produce great bodily injury requires a specific intent to produce great bodily injury. The only intent required is that required in the case of

any assault, i.e., to attempt a battery or, in other words, to intend an act the natural consequence of which is the application of force on the person of another. (*People* v. *Rocha* (1971) 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372]; see *People* v. *Hood* (1969) 1 Cal.3d 444, 457-458 [82 Cal.Rptr. 618, 462 P.2d 370].) The force used must be such as would be likely to produce great bodily injury, but it is not required that a defendant intends to inflict such injury. (*People* v. *Richardson* (1972) 23 Cal.App.3d 403, 411 [100 Cal.Rptr. 251]; *People* v. *Schmidt* (1944) 66 Cal.App.2d 253, 256 [152 P.2d 1021].) Thus, whether appellant's ultimate object was an act of oral copulation is not relevant as to whether he had the intent required by the statute.

3. *Sufficiency of evidence of assault by means of force likely to produce great bodily injury*

Appellant makes a double-barreled argument under this heading, half of which is predicated on the same mistaken assumption discussed above. ■ The other half is that, as a matter of law, an assault which produces only momentary interruption of breathing and slight reddening of the skin without any substantial damage to bodily tissues is not an assault by means of force likely to produce great bodily injury.

While it is true that "when the evidence shows that a blow has been struck or a physical injury actually inflicted, the nature and extent of the injury is a relevant and often controlling factor in determining whether the force used was of a felonious character" (*People* v. *Wells* (1971) 14 Cal.App.3d 348, 358 [92 Cal.Rptr. 191]; *People* v. *Muir* (1966) 244 Cal.App.2d 598, 604 [53 Cal.Rptr. 398]; see 1 Witkin, Cal. Crimes (1963) § 272 p. 255), an injury is not an element of the crime, and the extent of any injury is not determinative. "The crime . . . like other assaults, may be committed without infliction of any physical injury, and even though no blow is actually struck. [Citation.] The issue, therefore, is not whether serious injury was caused, but whether the force used was such as would be likely to cause it." (*Id.*; *People* v. *Wingo* (1975) 14 Cal.3d 169, 176 [121 Cal.Rptr. 97, 534 P.2d 1001]; *People* v. *Dewson* (1957) 150 Cal.App.2d 119, 132 [310 P.2d 162].)

It does appear to be the case that Shannon did not suffer great bodily injury. But the deputy's testimony as to the symptoms she exhibited would support a reasonable inference by a rational trier of fact that the force of appellant's assault, the choking, was likely to produce a serious

injury. (*People* v. *Bassett* (1968) 69 Cal.2d 122, 139 [70 Cal.Rptr. 193, 443 P.2d 777]; see *Jackson* v. *Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 573, 99 S.Ct. 2781, 2789].)

4. *Constitutionality, as applied, of Penal Code section 245, subdivision (a)*

Appellant argues that, although Penal Code section 245, subdivision (a), as it relates to assaults by means of force likely to produce great bodily injury, has been held not to be unconstitutionally vague (*People* v. *Poulin* (1972) 27 Cal.App.3d 54 [103 Cal.Rptr. 623]), the statute was vague as applied to this case. In the present context, according to appellant, the inherent relativity of the terms "likely" and "great" failed to give notice to appellant that his act was forbidden by the statute. (See *Smith* v. *Goguen* (1974) 415 U.S. 566, 577-578 [39 L.Ed.2d 605, 614, 94 S.Ct. 1242].) Appellant seems to say that if he had intended to kill Shannon, then he would have known that his act was likely to produce great bodily injury, but since he did not (or because there was doubt on that point, as revealed by the jury's failure to agree on count I), he had to speculate as to whether his conduct fell under the statutory proscription.

■ An assault by means of force likely to produce great bodily injury, is an assault, as to which the force essential to all assaults is of such a nature or degree that the probable result of its application will be the infliction of great bodily injury. In determining such probability, the trier of fact should not consider factors which the defendant does not know or would not reasonably be expected to know, such as an unusual sensitivity on the part of a victim or the chance intervention of a third party. Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate. (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 579, 581 [146 Cal.Rptr. 859, 580 P.2d 274]; *People* v. *Richardson, supra,* 23 Cal.App.3d at p. 411; *Froedge* v. *State* (1968) 249 Ind. 438 [233 N.E.2d 631].)

If appellant is suggesting that he didn't understand that throttling a person is likely to result in great bodily injury, his lack of understanding snaps the bounds of credulity.

5. *Instruction that Penal Code section 245, subdivision (a) defines a "general intent" crime*

■ The complete answer to appellant's contention that the court erred in instructing the jury that assault by means of force likely to produce great bodily injury is a general intent crime is to be found in *People* v. *Hood, supra*, 1 Cal.3d at pages 457-458: "It is true that in most cases specific intent has come to mean an intention to do a future act or achieve a particular result, and that assault is appropriately characterized as a specific intent crime under this definition. An assault, however, is equally well characterized as a general intent crime under the definition of general intent as an intent merely to do a violent act. Therefore, whatever reality the distinction between specific and general intent may have in other contexts, the difference is chimerical in the case of assault with a deadly weapon or simple assault . . . . [T]he definitions of both specific intent and general intent cover the requisite intent to commit a battery, . . ."

If assault by means of force likely to produce great bodily injury were a specific intent crime, the specific intent would be to commit battery, not to produce great bodily injury. Thus, even if it were error to instruct that assault by means of force likely to produce great bodily injury is a general intent crime, appellant was not harmed. His act, if he did it, was unquestionably one intended to result in the application of force to the person of Shannon, the question being whether it was likely to produce great bodily injury.

6. *Sufficiency of evidence of assault with intent to commit felony (forcible oral copulation)*

■ The evidence showed that appellant demanded that Shannon orally copulate him, and when she refused, assaulted her, telling her that he would kill her if she did not comply. That is sufficient evidence of assault with intent to commit forcible oral copulation. The evidence supports the inference that he was choking her in order to force her to cooperate in the commission of the act.

7. *Propriety of aggravated sentence*

The probation report stated that there were no circumstances in mitigation and that the circumstances in aggravation included "a prior assaultive charge, suggesting that [appellant] is a danger to society (rule 421(b)(1))" and "a prior prison term in Massachusetts (rule 421(b)(3).)" Appellant's attorney, his employer, and a friend wrote let-

ters to the judge and the probation officer, which were attached to the latter's report, stating that appellant had a good job, was a valued employee, had the qualities of efficiency, intelligence, loyalty, and kindness, but had had an unhappy marriage and child visitation problems, and a drinking problem (all of which may be considered circumstances in mitigation).

The court found no mitigating factors, and found as "circumstances in aggravation" and gave as a reason for imposing an aggravated term that appellant had been convicted "of a prior assaultive charge for which he served a prison term in Massachusetts."

Rule 421(b) sets forth as circumstances in aggravation: "Facts relating to the defendant, including the fact that: (1) He has engaged in a pattern of violent conduct which indicates a serious danger to society. . . . (3) The defendant has served prior prison terms. . . ." The rule is intended "for the consideration of the trial judge" (Pen. Code, § 1170.3) and "does not prohibit the application of additional criteria reasonably related to the decision being made." (Rule 408(a), Cal. Rules of Court.)

█ There is no authority for appellant's position that the court may not act upon the finding of only one of several circumstances in aggravation, and such a proposition would be unreasonable. Therefore, it does not matter whether the court was considering the presumed fact of appellant's prior conviction (i.e., applying rule 421(b)(3) or, as respondent contends, also considering a pattern of violent conduct (rule 421(b)(1)). Nor does it matter that the purported 1970 conviction (based on a 1969 incident) and the 1978 assault on Shannon may not establish a "pattern" in the strict sense of the word.

It would also be unreasonable to interpret rule 421(b)(3) to refer only to defendants who had served multiple prison terms and not to count as an aggravating factor that a person had served one term.

There are two other problems, however.

█ One problem is that the judge appears to have limited his consideration of circumstances in *mitigation* to those specified by rule 423 of the California Rules of Court. He failed to give consideration to the factors stated in the attorney's, employer's, and friend's letters. That

appellant was a good worker, a kind person, and that he had a drinking problem could be considered as mitigating factors. (*People* v. *Simpson* (1979) 90 Cal.App.3d 919, 926-928 [154 Cal.Rptr. 249] ["The court ...did not take into account appellant's alcoholism as a mitigating circumstance and therefore cannot be viewed as having exercised its discretion or as having weighed the circumstances. For this reason the judgment must be reversed." (At p. 927.)] As with rule 421 so the circumstances listed in rule 423 are illustrative, not exclusive. (Rule 408(a).)

The other problem is that appellant's presumed prior conviction appears not indeed to have been a conviction. Records attached to the probation report show that appellant was tried for assault with intent to commit rape of a child under 16, indecent assault and battery of a female child under 14, and simple assault and battery in Massachusetts in 1969. He was found not guilty of the first offense, guilty of the second and third, and sentenced to prison for three-to-five years in 1970. A petition for writ of habeas corpus was granted in December 1974, and the case was dismissed in January 1975. The district attorney moved to strike the allegation of that prior conviction on the ground that he could not prove that appellant was represented by an attorney in connection with it, and the court granted the motion.

Thus, appellant appears not to have had a prior conviction and the judge's finding that "the defendant was previously convicted of an assaultive charge" was mistaken.

The situation is comparable to *In re Huddleston* (1969) 71 Cal.2d 1031 [80 Cal.Rptr. 595, 458 P.2d 507]. There, a defendant was absolutely ineligible for probation because of two prior felony convictions. After he was sentenced, he petitioned for a writ of habeas corpus on the ground that one of the priors was constitutionally invalid. The court which heard the petition so found, thus determining that appellant was eligible for probation, but refused to remand the case to the trial court for resentencing on the ground that the record of that court showed that the judge had not denied probation because of the prior convictions but had considered the application for probation on its merits and denied it for other reasons. The Supreme Court held that "The defendant is entitled to a completely new and unbiased evaluation of his application for probation based upon all the facts of the case, including the fact of a single prior felony conviction. [¶] [H]e is entitled to a hearing in which

the court can exercise its judgment upon the basis of a sound presentation of his legal status." (*Id.*, at p. 1037; *People* v. *Ruiz* (1975) 14 Cal.3d 163, 167-168 [120 Cal.Rptr. 872, 534 P.2d 712]; *In re Cortez* (1971) 6 Cal.3d 78, 86-87, fn. 8 [98 Cal.Rptr. 307, 490 P.2d 819].)

Appellant is entitled to a new hearing on the question of circumstances in mitigation and aggravation at which all the mitigating factors are expressly considered and from which the alleged fact of his prior conviction is excluded from consideration. It does not follow that appellant is entitled to a new hearing on his application for probation, because the court denied probation not on the basis of appellant's supposed prior conviction but because "the violence involved in the instant offense indicates the defendant is a danger to society."

The convictions are affirmed. The judgment is remanded to the superior court for a new hearing on the question of aggravation or mitigation of the terms imposed for counts II and III.

White, P. J., and Takei, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.