Filed 8/18/14  P. v. Norman CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>   v.<br><br>JAMES NORMAN,<br><br>      Defendant and Appellant. | C074596<br><br>(Super. Ct. No. 12F06964) |

A jury found defendant James Norman guilty of assault with a deadly weapon (a machete) and the jury found true a great bodily injury enhancement.  He appeals, arguing the People presented insufficient evidence of the great bodily injury enhancement and the trial court abused its discretion in imposing the upper term of four years for the assault. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2012, defendant had been sleeping in the backyard of Mary Pinon's house for approximately three months.  Pinon's son, Ryan Jackson, had been growing

marijuana in the backyard of Pinon's house with defendant, and it became defendant's responsibility to keep watch over the marijuana grow. Living in the house were Pinon; Jackson; Jackson's fiancée, Kristen Viega; Jackson's and Viega's 22-month-old son Ryan J.; and Pinon's husband, Richard Kado. Three dogs lived at Pinon's house as well, including one pit bull belonging to Jackson.

On October 17, 2012, defendant began to collect his belongings and marijuana grow materials from Pinon's house to begin a new grow operation at a different location. Defendant went to Pinon's room to talk with her before moving his belongings. An argument broke out between defendant and Jackson, and Jackson pushed defendant onto the bed. Pinon asked Jackson and defendant to take the argument outside.

Soon, Viega came home and brought Ryan J. out into the front yard. Joseph Torrance, a close friend of Jackson, was in the front yard as well. Kado came home and met defendant in the front yard. Kado asked defendant to take his plants and leave. Kado then went to the backyard with his wife, Pinon, and all three dogs. Defendant stayed in the front yard with Jackson, Viega, Ryan J., and Torrance.

Defendant, after moving some of his belongings from the house to his car, was standing by the passenger side of his car playing with Ryan J. and asked Jackson, "Are we happy or are we sad?" Defendant and Jackson were arguing, and Viega told defendant to leave and come back another day. Defendant pulled a machete from the backseat of his car and hit Ryan J. in the leg. Jackson ran off the porch toward defendant, and defendant began to swing the machete at Jackson. Jackson backpedaled as he was blocking defendant's swings and tripped on a rock. Defendant then hit Jackson on the head with the machete, causing Jackson to blackout for a moment. When Jackson got to his feet, defendant continued chasing Jackson into the street swinging the machete at him.

Donoven Tolleson, a neighbor, came out to see what was happening. Tolleson saw defendant swinging the machete around and asked defendant to leave. Defendant came after Tolleson with the machete, prompting Tolleson to go into his house to get his

2

shotgun. Tolleson came back outside with his shotgun, and defendant ran away. Tolleson saw Jackson bleeding from his head and thought Jackson appeared unsteady on his feet. Moments later, Jackson and Tolleson decided to chase after defendant in Jackson's car with Tolleson's shotgun.

Jackson and Tolleson were stopped and detained by the police. Deputy Joseph Campoy was the deputy who pulled Jackson and Tolleson over and saw blood "pulsating" from Jackson's "large gash" wound. Deputy Campoy thought Jackson might be losing consciousness. Jackson was treated by paramedics and then moved to a hospital emergency room.

Jackson's head wound caused him severe pain, saying it felt like needles were being pushed into the wound. At the hospital, Jackson received seven staples and an inside suture for the two- to three-inch wound on his head. The emergency room doctor who treated Jackson was of the opinion staples were not required and the injury was on the less significant side compared to other head wounds. But if the staples had not been used to treat the wound, there would have been an unsightly scar. Jackson was given medication for the pain and was kept in the hospital overnight for observation.

About 30 minutes after pulling Jackson and Tolleson over, the police found defendant hiding behind a bush in the backyard of a neighboring house. A police dog found defendant and defendant yelled, "Get your dog off me. I give up." After placing defendant in handcuffs, defendant also stated of his own accord, "That will teach him to fuck with a Jamaican."

DISCUSSION

I

*There Was Sufficient Evidence Of Great Bodily Injury*

Defendant challenges the sufficiency of the evidence to support the jury's true finding of great bodily injury. The standard of review is well settled. If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to

3

accept it, even though the circumstances might reasonably be reconciled with a contrary finding. (*People v. Escobar* (1992) 3 Cal.4th 740, 750.) We do not reweigh the evidence.

Defendant primarily relies on the testimony of the emergency room doctor to support his argument that the injury "was not serious or even significant, but instead . . . fairly standard." We are not persuaded.

Great bodily injury is defined as "a significant or substantial physical injury." (Pen. Code, § 12022.7, subd. (f).) There is "no specific requirement that the victim suffer 'permanent,' 'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function." (*People v. Escobar*, *supra*, 3 Cal.4th at p. 750.) Here, there was substantial evidence of great bodily injury. Jackson had a two- to three-inch laceration to the head that required an inside suture and seven staples to close. Blood was pulsating out of his head. He appeared to be "be losing consciousness" and looked woozy.

In arguing the evidence was insufficient to prove great bodily injury, defendant primarily relies on two cases. The first is *People v. Martinez* (1985) 171 Cal.App.3d 727. *Martinez* dealt with what was characterized as a "pinprick," and the prosecutor asked for the great bodily injury allegation to be stricken because of the insufficient evidence. (*Martinez*, at p. 736.) Here, however, we have a two- to three-inch gash wound from a machete, which would have led to an unsightly scar if not treated. The second is a case in which defendant concludes "the court found" the victim did not suffer great bodily injury. (*People v. Covino* (1980) 100 Cal.App.3d 660.) Defendant misinterprets *Covino*. The court simply determined whether the evidence was sufficient to prove assault by means of *force likely* to produce great bodily injury. (*Id.* at pp. 667-668.)

In sum, the cases to which defendant points do not establish insufficient evidence of great bodily injury here. Rather, the evidence we have recounted was sufficient for the jury to have found the enhancement true.

*The Trial Court Did Not Abuse Its Discretion In Imposing The Upper Term*

Defendant contends the trial court erred in imposing the upper term for the assault because it relied on improper factors in aggravation.  Specifically, defendant challenges the court's use of its finding:  (1) that Jackson was responding to defendant's action of hitting Jackson's son; (2) that defendant chased Jackson after Jackson had been hit in the head; and (3) that defendant used a machete.  As we explain, while we agree the trial court's reliance on the use of the machete was error, we conclude that error is harmless.

When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court.  (Pen. Code, § 1170, subd. (b).)  Our Supreme Court has described a trial court's discretion under current law as follows:  "Even with the broad discretion afforded a trial court under the amended sentencing scheme, its sentencing decision will be subject to review for abuse of discretion."  "[A] trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions."  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847, 848.)  A court may not use a fact underlying an enhancement to impose the upper term unless the court strikes the enhancement, and a court may not use a fact that is an element of the crime to impose the upper term.  (*Id*. at p. 848.)

First, defendant argues the trial court's use of the fact Jackson was responding to seeing his child hit with a machete was improper.  Defendant argues this is error because "[t]he jury found that Mr. Jackson was the initial aggressor whose actions caused appellant's response and ultimately the injury to Ryan."  Defendant's argument is nothing more than speculation.  The jury made no such finding.  The trial court described the situation as follows:  "[T]his is not a kind of mutual combat in a bar that escalates.  This is a father who is responding understandably emotionally to seeing his young son just hit with a machete."  In comparing the assault here to an assault at a bar, the trial court is

distinguishing this situation from others. The trial court found this surrounding circumstance to be an aggravating factor and this conclusion is not unreasonable. The trial court properly considered this circumstance surrounding the assault as a factor in aggravation.

Second, defendant argues "the act of chasing someone with a weapon is a violent crime and the fact of the charge itself cannot support an enhanced or upper term sentence." We agree that a fact which is an element of the crime may not be used to impose a greater term (Cal. Rules of Court, rule 4.420), but here the trial court stated a fact beyond the elements of the offense. The trial court relied on the timing of the assault as a factor in aggravation. The trial court reasoned the defendant injured Jackson's son *prior to* continuing to chase Jackson around with the machete, which made this assault distinctively worse. The trial court specifically stated that even though the injury itself is not a factor in aggravation, the injury does reflect on the aggravated conduct "because having inflicted that injury, the defendant continues to chase the victim around the yard."

Third, defendant argues the trial court's use of the fact that a machete was used was error because it was an element of the offense. He is correct, but the error was not prejudicial. Even if a trial court has stated both proper and improper reasons for a sentence choice, " 'a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper.' " (*People v. Jones* (2009) 178 Cal.App.4th 853, 861.)

The trial court specifically stated, "[E]ach one of those factors that I have mentioned would alone warrant the upper term." Therefore, the trial court would have imposed the upper term sentence even if each one of those factors stood individually. More importantly, our Supreme Court has stated, "[U]nder the DSL the presence of *one* aggravating circumstance renders it lawful for the trial court to impose an upper term sentence." (Italics added.) (*People v. Black* (2007) 41 Cal.4th 799, 815.) A single

6

proper reason is sufficient to impose the upper term.  Here there was more than one, and the trial court could have relied upon each one individually to impose the upper term.

DISPOSITION

The judgment is affirmed.



                                                            ROBIE          , Acting P. J.



We concur:



      DUARTE          , J.



      HOCH          , J.



7