Filed 10/16/20  P. v. Becerra CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073121 |
| v. | (Super.Ct.No. RIF1800497) |
| VICTOR HERNANDEZ BECERRA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Charles J. Koosed, Judge. Affirmed.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found Victor Hernandez Becerra guilty of committing three crimes against his wife, Jane Doe—aggravated assault (by means of force likely to produce great bodily injury), making criminal threats, and violating a restraining order. Becerra raises a single contention on appeal. He argues there was insufficient evidence that he used force likely to produce great bodily injury when he tried to strangle Doe by pressing his thumb into her windpipe for approximately one minute. We disagree the evidence is insufficient and therefore affirm.

## I

## FACTS

Before the crimes in this case, which lead Doe to file for divorce, she had been married to Becerra for 13 years. She said the first several years of their marriage were good, but things took a turn in 2009 when he began drinking heavily. By the summer of 2017, he was drinking about three pints of tequila and a six-pack of beer a day, and was being physically and verbally abusive to the point where Doe was scared to be around him and was happy to leave the house for work. Sometimes she would try to talk to him about separating, but he would get angry and say things like, "You're not going to leave. I'm not going to let you leave."

On August 27, 2017, Doe left their house around 9:30 in the morning to attend church with her friend. After church, she went back to the friend's house and sought advice from her pastor about her marriage. When she returned home several hours later,

Becerra demanded to know where she'd been. He was drunk and angry, and he accused her of cheating.

Scared, Doe went into the bedroom to avoid a fight, but Becerra followed her. He got in her face, called her a whore, and bumped his chest against hers aggressively. She felt trapped in the bedroom, so she moved into the kitchen. She tried to explain that she had been talking to the pastor and was not cheating. Just then, she received a text from her friend who was checking in on her. This made Becerra angrier. He suspected the text was from her lover.

After several more minutes of arguing, Becerra suddenly grabbed Doe by the throat with one hand. Doe was terrified and tried to talk calmly to him, but he just became more angry and pressed his thumbnail into her windpipe, so hard that it "really hurt." Doe said she was able to breathe while he was doing this but that it hurt so badly she "thought [she] was going to die." Becerra continued to press his thumb into her windpipe for "about a minute," then tried to put his other hand around her neck. Doe was able to push him away and break free, but his hand struck her jaw in the process. After she was free, Becerra began laughing and remarked, "[so] they're teaching you to fight now?"

Doe went outside and called the police, and ended up going to the emergency room to have her neck and throat examined. She had a bruise on her jaw from when Becerra's hand hit it and, for a week after the incident, her voice was hoarse and it hurt to swallow.

3

At trial, the prosecution called Detective Vaughan to testify as an expert on strangulation. He described the domestic violence cycle and how the abuser seeks power and control over the victim. He said strangulation is the most effective way for an abuser to achieve those goals because just a few seconds of pressure in the right places can produce dizziness and an altered state of consciousness. He said oxygen deprivation can cause immediate and permanent damage to the brain and that it only takes five to 10 seconds of pressure on the carotid artery and the jugular vein (which run along the sides of the neck) to render a person unconscious. And, because those crucial blood vessels are on the side of the neck, it's possible to render a person unconscious without affecting their breathing. Applying pressure to the carotid artery and the jugular vein can injure those blood vessels, creating a higher risk for aneurism. Finally, Detective Vaughan explained that the front of the neck is an extremely vulnerable area because it contains sensitive parts like the voice box, tracheal rings, and tiny, delicate bones that can be easily "cracked or broken."

Based on this evidence, the jury convicted Becerra of aggravated assault in violation of Penal Code section 245, subdivision (a)(4).[1] As noted, the jury convicted Becerra of two other offenses (making criminal threats and violating a restraining order) based on additional conduct that we need not discuss here because it is irrelevant to the

---

[1] Unlabeled statutory citations refer to the Penal Code.

sole issue on appeal. The trial court sentenced Becerra to a total term of four years,[2] and he filed a timely notice of appeal.

## II

## ANALYSIS

Becerra challenges the sufficiency of the evidence to support his assault conviction. He argues the evidence was insufficient to support a finding that he used force likely to produce great bodily injury because Doe could breathe while he had his thumb on her windpipe and didn't suffer any injuries aside from a bruised jaw. We are not persuaded.

When assessing a challenge to the sufficiency of the evidence to support a conviction, we '"examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."' (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129.) We focus on all the evidence presented, not isolated portions of the record. (*People v. Slaughter* (2002) 27 Cal.4th 1187, 1203.) Because the jury is in the best position to assess witness credibility, we will not reweigh the evidence. Meaning, the fact the evidence might lead us to reach a different verdict if we were sitting as a fact finder doesn't also mean the evidence supporting the verdict is insubstantial. (*People v. Holt* (1997) 15 Cal.4th 619,

---

[2] The court imposed the midterm of three years for the assault, plus a consecutive eight-month term for the criminal threats, plus a consecutive county jail sentence of four months for the restraining order violation.

669.) Indeed, "[t]he uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable." (*People v. Scott* (1978) 21 Cal.3d 284, 296.) In short, reversal is appropriate only where "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

One of the ways a person can commit aggravated assault is by using "force likely to produce great bodily injury." (§ 245, subd. (a)(4).) Great bodily injury is that "which is significant or substantial, not insignificant, trivial or moderate." (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066.)

The use of hands or fists alone may constitute force likely to produce great bodily injury. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.) In fact, "[o]ne may commit an assault *without making actual physical contact* with the person of the victim; because the statute focuses on . . . force *likely* to produce great bodily injury, whether the victim in fact suffers any harm is immaterial." (*Ibid.*, first italics added.) While the nature and extent of any physical injury inflicted is relevant in determining the manner and degree of force used, "an injury is not an element of the crime, and the extent of any injury is not determinative." (*People v. Covino (*1980) 100 Cal.App.3d 660, 667.) "'The issue, therefore, is not whether serious injury was caused, but whether the force used was such as would be likely to cause it.'" (*Ibid.*) This inquiry is a factual question for the jury to determine. (*People v. Sargent* (1999) 19 Cal.4th 1206, 1221.)

6

In this case, two crucial aspects of the trial support a finding Becerra used force likely to produce great bodily injury—Doe's description of the assault and Detective Vaughan's testimony about the types of injuries that are likely to occur as the result of strangulation. Doe said Becerra pressed his thumb so hard into her windpipe for about a minute that she thought she was "going to die" from the pain. Detective Vaughan testified that the front of the neck, where Becerra was pushing, is the most vulnerable part because it contains sensitive tissues and delicate bones. In other words, Doe supplied evidence about the type of force Becerra actually used (enough force to hurt very badly) and Detective Vaughan supplied evidence about what that type of force, applied in that area, is likely to do to a person (break any one of the small bones in the neck or damage the trachea or larynx). This evidence amply supports the jury's finding that Becerra used force likely to produce great bodily injury.

And Becerra mischaracterizes the record when he argues Doe suffered no injuries from his assault other than a bruised jaw. While it may be true she suffered no *visible* injuries from his pressing on her windpipe, she certainly was injured. She said it hurt to swallow for a week and her voice was hoarse. And, though there is no requirement the victim suffer any injury in order for the jury to find a defendant guilty of this kind of aggravated assault, the fact Doe was sore for a week corroborates her testimony that Becerra was pressing on her windpipe with sufficient force to "really hurt."

We are not persuaded by Becerra's attempt to liken his case to *People v. Duke* (1985) 174 Cal.App.3d 296. In that case, the defendant was convicted of aggravated

7

assault based on evidence he walked up to the victim, "grabbed [her] around the neck and touched her breasts through her sweater." (*Id.* at p. 299.) The incident lasted only seconds. The victim screamed when he touched her and "[h]e let her go when she screamed." (*Id.* at p. 301.) At trial, the victim said the defendant had put her in a sort of a headlock. She said "his hold on her was 'firm,' but did not say that he tightened his grip." (*Id.* at p. 302.) The appellate court concluded this was insufficient evidence the defendant had used force likely to produce great bodily injury. (*Id*. at pp. 303-304.) These facts are easily distinguishable from ours. The *Duke* assault was extremely brief and the victim didn't say the force the defendant had used caused her pain. Here in contrast, Becerra applied such sustained pressure to Doe's windpipe that Doe thought she might die from pain. A headlock that lasts a few seconds is incomparable to a minute-long strangling.

We are similarly unmoved by Becerra's assertion that his case is not like *People v. Covino*, *supra*, 100 Cal.App.3d at p. 666, where the defendant pressed *both* thumbs on the victim's larynx, causing her to gasp and making her tongue protrude from her mouth and her eyes bulge. (*Id.* at pp. 664-665.) But *Covino* did not set a minimum standard for force necessary to support an aggravated assault conviction, and the fact there may be strangulation cases involving more force than Becerra used on Doe does not help him in a substantial evidence review. Our inquiry is whether there was enough evidence before these jurors to permit them to find that he used force likely to produce great bodily injury.

We conclude the record easily meets that standard. Based on Doe's and Vaughan's testimony, the jury could reasonably conclude that the act of pressing firmly on a

8

person's windpipe for about a minute could likely result in a number of significant injuries, such as a broken bone or damaged trachea. That such a likelihood did not come to pass for Doe does not mean the evidence was insufficient, it means the jury believed she was fortunate not to have been more seriously injured.

## III

## DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.