Filed 12/4/20  P. v. Singh CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C089081 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF184734) |
| v. | |
| BALJIT SINGH, | |
| Defendant and Appellant. | |

Defendant Baljit Singh slapped his wife and later grabbed her by the neck.  The jury found him guilty of aggravated assault and domestic violence charges.  The trial court sentenced defendant to four years in prison, which included one year for a prior prison term enhancement charged pursuant to Penal Code section 667.5, subdivision (b).[1] The court also imposed a 10-year protective order.

---

[1] Further undesignated statutory references are to the Penal Code.

1

On appeal, defendant contends the trial court committed instructional error by failing to instruct the jury on the lesser included offense of simple assault. He further contends that: (1) Senate Bill No. 136 mandates remand to strike the one-year sentencing enhancement; (2) the protective order was erroneously issued under section 273.5 and should be remanded for possible issuance under section 136.2; and (3) the abstract of judgment is incorrect.

We modify the judgment and remand for resentencing and correction of the abstract of judgment. We otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Offense*

Defendant and Urmil married following a two-month relationship and moved in together, with Urmil's two sons from a previous marriage. Shortly after they married, defendant began drinking heavily. When he drank, he would often use abusive language and become physically violent towards Urmil.

On August 10, 2018, after defendant had been drinking for several days, Urmil and defendant were in their bedroom arguing about his drinking. Defendant reacted to Urmil's disclosure that she had previously recorded him saying "very bad things" about her by forcefully slapping her twice on the face. Urmil retreated to the kitchen, but defendant followed her and began to insult her family. Urmil's 17-year-old son was in the living room with a clear view of the kitchen. As the couple continued arguing, defendant pushed Urmil into the corner of the kitchen and grabbed her around the neck with his right hand, hard. His thumb gripped one side of her throat while his fingers wrapped around and gripped the other side. Urmil felt a little bit of pain and some pressure from his grip, but was able to breathe.

The son saw defendant grab Urmil around the neck. As defendant held her neck, he called her a prostitute and a slut as she screamed. The son ran over and tried to physically push them apart by trying to get in between them, but defendant would not

2

release his grip on Urmil's neck. The son "need[ed] to punch him" so that he would move his hand from her neck. The son punched defendant so hard he fell over; he let go of Urmil's neck when punched. Urmil believed that without her son's intervention, defendant might have killed her.

Urmil and her son went outside for their safety. Defendant's grip on Urmil's neck caused a reddened, one-inch abrasion. Several hours later, Urmil felt pain "inside [her] neck and on the nerves."

The People's expert testified on non-fatal strangulation. He stated generally that gripping an individual's neck with less pressure than it takes to open a can of soda can cause an individual to lose consciousness in 10 seconds, to suffer an anoxic seizure in 14 seconds, and to die within a minute. It is possible for an individual to not feel any effects of strangulation within the first five seconds, and it is unusual for any nonfatal strangulation to leave a visible external injury.

*The Defense*

Defendant testified on his own behalf. He agreed that on August 10 he was drinking and arguing with Urmil in the bedroom as well as the kitchen while the son was nearby. When Urmil said she wanted to take her children and go to her father's house, defendant told her not to go. Urmil and her children walked out the front door and defendant followed them. At that point, the son punched defendant multiple times in the face. Defendant denied slapping, grabbing, or strangling Urmil that day.

*The Charges and Outcome*

The People charged defendant with inflicting corporal injury on his spouse (§ 273.5, subd. (a); count 1), aggravated assault (§ 245, subd. (a)(4); count 2), battery against a spouse (§ 273.5, subd. (e)(1); count 3), and abusing or endangering the health of a child (§ 273a, subd. (b); count 4).

3

The jury found defendant guilty of the lesser included offense of attempted infliction of corporal injury on a spouse, aggravated assault, and abusing or endangering the health of a child. It acquitted him of spousal battery.

The trial court sentenced defendant to the middle term of three years in prison for aggravated assault and a one-year enhancement for the prior prison term. The court also sentenced defendant to the middle term of 18 months for attempted infliction of corporal injury on a spouse, stayed pursuant to section 654, and a concurrent term of 180 days in jail for abusing or endangering the health of a child. The court issued a 10-year protective order pursuant to the People's request but did not specify the statutory authority therefor. This timely appeal followed.

## DISCUSSION

### I

### *Lesser Included Offense of Simple Assault*

Defendant argues there was substantial evidence for a reasonable jury to find that defendant committed simple assault when he grabbed Urmil by the neck, rather than assault by means of force likely to produce great bodily injury. Thus, he contends the trial court erred in failing to sua sponte instruct the jury on simple assault. He further contends the error was prejudicial.

A. *Background*

The prosecutor elected in closing argument that the assault with force likely charge was based on defendant's conduct in the kitchen, that is, the grabbing of Urmil's throat. Neither party requested an instruction on the lesser included offense of simple assault and the court did not raise the issue or give the instruction.

During deliberations, the jury asked whether count 3, domestic battery, was limited to the slaps in the bedroom or included all of the evidence presented. Defense counsel argued that the jury should be permitted to consider all evidence for count 3, because "the 273.5 is [a] continuous course of conduct." Counsel added that "[i]f the

4

slaps in the bedroom are part of the continuing course of conduct for what happened in the kitchen, the [domestic battery] is absolutely a lesser included offense." Counsel posited that if the jury were allowed to consider "whether . . . what happened in the kitchen is a 273.5 or a lesser included . . . of contact continuing from the bedroom as a [domestic battery,]" it would "make[] up for the fact that we didn't read the [simple assault] instruction as a lesser included for count 2 to them, because the [domestic battery] can kind of act like a lesser for the 245 as well."

The trial court responded (correctly) that domestic battery is not a lesser included offense of assault with force likely and indicated it would tell the jury that "count 3 deals with the conduct in the bedroom." There was no further discussion regarding a jury instruction for simple assault.

After the verdicts, defendant moved for a new trial on the grounds that the trial court erred in failing to instruct the jury on simple assault. The court denied the motion, noting that "[t]he defense was that no assault occurred, no assault by means of force likely to produce great bodily injury, not the level of assault."[2]

B. *The Law*

A trial court is required to instruct on lesser included offenses that are supported by substantial evidence. (*People v. Licas* (2007) 41 Cal.4th 362, 366.) Substantial evidence in this context "is not merely '*any* evidence . . . no matter how weak' [citation], but rather ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[]" ' that the lesser offense, but not the greater, was committed." (*People v.*

---

[2]  The trial court also noted that because the jury convicted on the greater charge, it "would have never gotten to a lesser charge." This observation is not relevant to the issue of whether the jury should have been given the choice to convict on a lesser offense, rather than the all or nothing choice it was given. As we explain, the relevant inquiry is whether substantial evidence supported conviction on the lesser offense. If the answer to that question is yes, the fact that the jury selected the greater offense over the option of acquittal *does not* remedy the error.

*Cruz* (2008) 44 Cal.4th 636, 664.) Thus, there must be " 'evidence which, if accepted by the trier of fact, would absolve [the] defendant from guilt of the greater offense' [citation] but not the lesser." (*People v. Memro* (1995) 11 Cal.4th 786, 871, italics omitted.) " '[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support.' [Citation.]" (*People v. Smith* (2013) 57 Cal.4th 232, 240.)

We review de novo claims of error for failure to instruct on a lesser included offense. (*People v. Licas, supra*, 41 Cal.4th at p. 366.) In doing so, we consider the evidence in the light most favorable to the defendant. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.) However, it is defendant's burden to show error by demonstrating substantial evidence of the lesser offense. (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1458.)

Simple assault (§ 240) is a lesser included offense of aggravated assault. (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747-748.) Simple assault requires that a defendant willfully commit an "an act that by its nature would directly and probably result in the application of force to a person" with the present ability to do so. (CALCRIM No. 915.) The elements of simple assault are included in the elements of aggravated assault; thus, one cannot commit an aggravated assault without also committing a simple assault. (*People v. Yeats* (1977) 66 Cal.App.3d 874, 879.) We must therefore determine whether a reasonable jury could have found that defendant committed *only* a simple assault and not an assault with force likely to produce great bodily injury. (See *McDaniel,* at p. 748.)

"Great bodily injury" is defined as "a significant or substantial physical injury." (§ 12022.7, subd. (f); see *People v. Brown* (2012) 210 Cal.App.4th 1, 7.) The force has to be "likely" to produce a great bodily injury; it is immaterial whether the victim in fact suffers any harm." (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028, 1032.) "[T]he use

of hands or fists alone may support a conviction of assault 'by means of force likely to produce great bodily injury.' " (*Id.* at p. 1028.)

C. *Analysis*

Defendant argues that a reasonable jury could have found simple assault from the evidence presented at trial, as an alternative to assault by means of force likely. While he concedes that choking a person *unconscious* necessarily suggests force likely to produce great bodily injury, he contends that because Urmil testified she was able to breathe, felt only minimal pain, and did not suffer long-term injuries or pain from the incident, there was a possibility of a lesser finding. He adds that the People's expert testified generally to the possible effects of manual strangulation and did not analyze the specific facts here. Although defendant testified that he did not even *touch* Urmil's throat, he now argues that the jury could have concluded the truth fell somewhere between his version of no contact and her version of contact, backed by the expert's description of the danger of great bodily injury inherent in even momentary strangulation such as that described by Urmil and her son at trial.

As we have described in detail *ante*, the evidence of assault against Urmil was provided by her and her son, and established that defendant pushed her into a corner and gripped her neck with his right hand, hard, from the front, with his thumb on one side of her neck and four fingers on the other, for a significant period of time while he called her names. Urmil's 17-year-old son could not physically force defendant to release her until he punched him in the face. Urmil believed she might have died had her son not forcefully intervened. She suffered an abrasion on her neck, followed by neck and nerve pain several hours later. The expert testified that a throat grab even with relatively minor pressure creates the risk of serious injury within seconds, and the risk of death within one minute, even where, as here, the victim feels minimal physical effects in the moment.

To rise to the level of force likely to cause great bodily injury, it is not necessary that the choking victim be rendered unconscious (*People v. Berry* (1976) 18 Cal.3d 509,

518-519*)* or turn red and gasp for breath (*People v. Covino* (1980) 100 Cal.App.3d 660, 664-665, 667-668). Rather, the force must be likely to cause "a significant or substantial physical injury." (§ 12022.7, subd. (f).) The evidence shows that likelihood here. If a reasonable jury believed the only version of an assault presented in this case, it necessarily would have found assault with force likely, given the evidence at trial.

*People v. Brown* (2016) 245 Cal.App.4th 140, on which defendant relies, is distinguishable. There, the defendant was convicted of resisting an executive officer pursuant to section 69. On appeal, the defendant argued that the trial court should have instructed on the lesser included offense of simple assault. The appellate court agreed, holding that the jury could have concluded that the officers used unreasonable or excessive force if they credited the defendant's version of events, but could also have concluded that the defendant responded to the officers' use of excessive force with unreasonable force, if they *also* credited the officers' version of events. (*Brown*, at p. 154.) Thus, the jury could have concluded from the evidence presented that the officers' use of force was excessive but that the defendant's use of force in response was unreasonable, which would have supported an assault conviction: " '[W]hen excessive force is used by a defendant in response to excessive force by a police officer ... defendant [may] be convicted, and then the crime may only be a violation of section 245, subdivision (a) or of a lesser necessarily included offense within that section,' such as section 240." (*Ibid*.)

Here, there was simply no evidence that a *lesser* assault occurred, even crediting *all* the evidence presented and considering it as a whole. There was evidence that defendant did not assault Urmil, and there was evidence that he assaulted her with force likely to cause bodily injury. While we agree that a jury certainly may believe a portion of each side when two sides of the relevant happenings are presented, and it may, from the evidence presented, formulate a "middle ground" such as that described by *Brown*, the middle ground on which to base the sua sponte giving of an instruction must be

grounded in actual evidence presented, and must be supported by substantial evidence. We see no evidentiary support for such a middle ground finding here, certainly not a finding that is supported by substantial evidence.**3** Defendant's claim of instructional error fails. Because we conclude no error occurred, we do not reach the claim of prejudice.

## II

### *Prior Prison Term Enhancement*

Defendant contends the one-year prior prison term enhancement imposed pursuant to section 667.5, subdivision (b) must be stricken due to the change in the law promulgated by Senate Bill No. 136 (2019-2020 Reg. Sess.) effective January 1, 2020. The Attorney General agrees. We agree with the parties.

Senate Bill No. 136 amended section 667.5, subdivision (b), which formerly imposed a one-year sentence enhancement for prior prison terms such as defendant's here. Pursuant to Senate Bill No. 136, the enhancement now applies only if a defendant served a prior prison term for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b). (See Stats. 2019, ch. 590, § 1.)

Because his sentence was not final when Senate Bill No. 136 took effect and because his prior offense was not for a sexually violent felony, we agree that the amended law applies to defendant retroactively. (See *People v. Vieira* (2005) 35 Cal.4th 264, 306 [defendant entitled to retroactive application of criminal statute that takes effect during the time defendant has to appeal to the United States Supreme Court]; *In re Estrada* (1965) 63 Cal.2d 740, 742; *People v. Lopez* (2019) 42 Cal.App.5th 337, 341-342.)

Because the trial court imposed less than the maximum sentence, we remand the matter for full resentencing to allow the court to exercise its discretion in light of the

---

**3** We note the Attorney General failed to address *Brown* and defendant's reliance on it.

9

changed circumstances. (See *People v. Lopez, supra*, 42 Cal.App.5th at p. 342; *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15.) While the trial court is entitled to reconsider its entire sentencing scheme, defendant may not be sentenced to a term in excess of his original sentence. (See *People v. Burns* (1984) 158 Cal.App.3d 1178, 1184.)

III

*Protective Order*

At defendant's sentencing hearing, the trial court granted the People's request for a 10-year criminal protective order. Defendant did not object. He now contends that when the court issued the protective order, it erroneously checked the box on the form authorizing the order under section 273.5, subdivision (j). He argues the protective order could only have properly issued pursuant to subdivision (i)(1) of section 136.2, and that the statutorily required findings were not made; thus, the order was insufficient. He avers that where a protective order is issued under that subdivision, the court must make an express finding that defendant was found guilty of a crime involving domestic violence, and that the duration of the order was based on the "seriousness of the facts before the court, the probability of future violations, and the safety of a victim and his or her immediate family." (§ 136.2, subd. (i)(1).) Because the court made no such findings, defendant asks us to remand the case for the trial court to issue a protective order consistent with what he contends are the applicable statutory requirements.

The Attorney General agrees that the box designating the protective order under section 273.5, subdivision (j) was erroneously checked, but argues that defendant forfeited his claim by failing to object in the trial court. We agree the claim is forfeited.

"As a general rule, an appellant [forfeits] issues on appeal that he or she did not initially raise in the trial court. [Citation.] But there are exceptions to this rule for unauthorized sentences and sentencing decisions that are in excess of the trial court's jurisdiction." (*People v. Ponce* (2009) 173 Cal.App.4th 378, 381.) In *Ponce*, the defendant did not object in the trial court to a three-year protective order issued under

10

section 136.2. The Court of Appeal concluded the defendant did not forfeit his claim that the protective order was of an unauthorized duration because he challenged the order's jurisdictional validity. (*Ponce,* at pp. 381-382.)

Here, unlike in *Ponce*, the challenge is not jurisdictional. The parties agree that the court had the authority to issue the 10-year protective order under section 136.2, subd. (i)(1), which allows for protective orders of up to 10 years where, as here, the defendant was found guilty of a crime involving domestic violence. As the court had jurisdiction to issue the protective order under section 136.2, subd. (i)(1), and defendant failed to object to the imposition of the protective order, the general rule of forfeiture applies, and the issue is forfeited. (*People v. Race* (2017) 18 Cal.App.5th 211, 219, fn. 4.)

In any event, defendant's contention that the court must make express findings that defendant was found guilty of a crime involving domestic violence and that the duration of the order was based on the "seriousness of the facts before the court, the probability of future violations, and the safety of a victim and his or her immediate family" in order to issue a protective order under section 136.2, subd. (i)(1) is not supported by the statutory language or by any other authority.

IV

*Abstract of Judgment*

The parties agree that the abstract of judgment erroneously states that defendant was sentenced to prison due to a "current or prior serious or violent felony." In fact, none of defendant's current or prior felonies qualify as such. (See §§ 667.5, 1192.7.)

"Entering the judgment in the minutes being a clerical function [citation], a discrepancy between the judgment as orally pronounced and as entered in the minutes is presumably the result of clerical error." (*People v. Mesa* (1975) 14 Cal.3d 466, 471.) We thus presume that checking the box "current or prior serious or violent felony" in the abstract of judgment was a clerical error and we will direct correction thereof.

11

## DISPOSITION

We modify the judgment to strike the one-year prior prison term enhancement and remand for resentencing.  The trial court is directed to correct the abstract of judgment as described by this opinion and to deliver a certified copy of the new abstract to the Department of Corrections and Rehabilitation.

            /s/
Duarte, Acting P. J.

We concur:

       /s/
Hoch, J.

/s/

Renner, J.

12