Filed 2/24/22  P. v. Deloge CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH KYLE DELOGE,<br><br>Defendant and Appellant. | C088603<br><br>(Super. Ct. Nos. MCYK-CRBF-2015-1148-2, MCYK-CRBF-2015-1344) |

Convicted of domestic abuse, criminal threats, and other crimes and sentenced to 45 years eight months in prison, defendant Joseph Kyle Deloge appeals.  He contends (1) the evidence was insufficient to support the convictions for (A) a criminal threat as alleged in count 2, (B) a criminal threat as alleged in count 11, (C) felony false imprisonment as alleged in count 3, and (D) assault with force likely to produce great bodily injury as alleged in count 4.  Defendant also contends (2) the trial court erred by not giving the jury a unanimity instruction relating to felony false imprisonment as alleged in counts 3 and 6; (3) the prosecutor committed misconduct on several occasions during trial and defense counsel was ineffective in failing to object; (4) we must strike the

1

two one-year terms imposed under Penal Code former section 667.5, subdivision (b),[1] because the statute has been amended to eliminate those terms; (5) we must remand to provide the trial court an opportunity to exercise its newly-enacted discretion concerning whether to strike or dismiss defendant's prior serious felony conviction under section 667, subdivision (a)(1); (6) defendant's admissions to the prior conviction allegations were not knowing, intelligent, and voluntary because the trial court did not advise him of his constitutional rights against self-incrimination, to confront his accusers, and to a jury trial, and did not advise defendant of the full penal consequences of his admissions; and (7) amendments to section 1170 in Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) require remand for resentencing.

We conclude (1) the evidence was insufficient to support a conviction for a criminal threat as alleged in count 2 because there was no evidence of a verbal threat, but the evidence was sufficient to support the other convictions; (2) no unanimity instruction was required for felony false imprisonment as alleged in counts 3 and 6 because each count consisted of acts constituting a continuous course of conduct; (3) defendant forfeited the prosecutorial misconduct contention and defendant fails to establish that defense counsel was ineffective; (4) we will strike the one-year prior prison term enhancements under former section 667.5, subdivision (b); (5) we will remand for the trial court to exercise its discretion concerning whether to strike or dismiss defendant's prior serious felony conviction under section 667, subdivision (a)(1); (6) defendant's admissions were knowing, intelligent, and voluntary under the totality of the circumstances; and (7) the trial court must sentence defendant on remand consistent with the newly-enacted amendments to section 1170, subdivision (b) added by Senate Bill 567.

---

[1] Undesignated statutory citations are to the Penal Code.

We will reverse the criminal threat conviction in count 2, strike the two one-year enhancements under section 667.5, subdivision (b), vacate the sentence, and remand for the trial court to exercise its discretion concerning whether to strike or dismiss the prior serious felony conviction allegation under section 667, subdivision (a)(1) and to resentence defendant.

BACKGROUND

Defendant and D.A.C. were in an on-again, off-again relationship for 13 years and shared three children. D.A.C. testified reluctantly against defendant because she had been with defendant for 13 years, they had children together, and she felt bad about what had happened. Beginning in 2007, defendant became physically abusive, committing violence on D.A.C. probably more than 20 times. Toward the end of their relationship, defendant threatened 10 or more times to kill D.A.C. By August 2015, they were no longer living together.

On August 18, 2015, D.A.C. and her children were in Yreka in a car with Norman P., who was driving. Defendant approached and demanded that D.A.C. and the children get out of the car. He tried to reach in and grab the car keys from Norman, and he told Norman to stay away from D.A.C. Defendant said several times that he knew where Norman lived and that he was going to burn down Norman's house and kill Norman. Norman drove away, and defendant continued yelling and threw a rock, striking the car. Norman did not take the threats seriously at first. At trial, he said: "I thought he was joking . . . , just to make me worried . . . ." However, Norman said he became worried about defendant's threat when defendant soon showed up at Norman's house.

After the rock-throwing incident, Norman drove D.A.C. and the children to his house, where defendant arrived within 45 minutes to an hour. Defendant beat on Norman's door, cussing, yelling, and pacing back and forth. Defendant demanded that D.A.C. and Norman come outside, and he threatened to kill them. Believing that defendant would kill him, Norman pushed a button on a house alarm. Defendant heard

3

the alarm go off, and he left. In response to the alarm, a sheriff's deputy arrived, but defendant was already gone. For a month, until defendant was arrested, Norman feared defendant would return and make good on his threats.

On August 20, 2015, D.A.C. and her children were at her apartment when defendant arrived. D.A.C. refused to let him into the apartment, so, later, defendant entered through a bedroom window, startling D.A.C. and her daughter, who were in bed in the room. Defendant and D.A.C. argued, and D.A.C. could not remember if defendant made any threats. Defendant prevented D.A.C. from leaving the bedroom. D.A.C. threatened to jump out the window.

Later, in the living room of D.A.C.'s apartment, defendant, holding a handgun, punched D.A.C. in the back and in the side, knocking the wind out of her and causing soreness. He also kicked her in the shins a couple times, causing bruising. Defendant waved the gun around, pointed it at D.A.C., and pretended to shoot at her. He was laughing and joking. D.A.C. testified she told a sergeant from the sheriff's department she was afraid defendant would shoot her. However, D.A.C. later testified that she was not afraid defendant would intentionally shoot her but instead was concerned he might carelessly shoot her.

At another time on the same day, defendant stood by the door, preventing D.A.C. from leaving with the children. Defendant physically blocked the door.

On August 21, 2015, the day before defendant was arrested, D.A.C. had her children stay with someone else away from her apartment because she did not want them around if there was violence. On that evening, defendant went to D.A.C.'s apartment, and she let him in. Defendant was acting paranoid, and they argued extensively. Defendant punched D.A.C. in the side and knocked the wind out of her a couple of times. D.A.C. tried to go out the door, but defendant prevented her from doing so. Defendant grabbed her and squeezed her by the shoulders when she tried to push past him. Defendant believed D.A.C. was recording him using her earring, so he threatened to rip

4

the earring out. When D.A.C. stood up, defendant grabbed her by the shoulders and sat her back down. Defendant burned D.A.C. on the leg with a cigarette.

Defendant dragged D.A.C. by the hair down the hall and pushed her into a bedroom, where they had sex. D.A.C. did not want to have sex and tried to get up out of the bed, but defendant held her around the waist. Defendant bit D.A.C.'s cheek, got on top of her with his knees on her arms, choked her, and smothered her with a pillow. When she tried to get up, defendant hit her in the side, knocking the wind out of her. D.A.C. thought she was going to die.

The abuse that began August 21, 2015 lasted through the night. The next day, defendant stopped attacking D.A.C. when someone banged on the door. D.A.C. was bleeding from her nose and lip. Defendant threw a towel at her and told her to wipe off her face. He told her that, if she called the police, he would kill her, the police, and himself. While defendant was looking for his shoe, D.A.C. escaped out the door and ran to a neighbor's house. At the neighbor's house, the neighbor called 911. D.A.C. was shaking and crying. She was bruised and bleeding and had a burn mark from a cigarette.

Police officers went to D.A.C.'s apartment and knocked on the front door. Soon, defendant was captured trying to escape out the back of the apartment.

Defendant testified at trial. He denied trying to take Norman P.'s keys, threatening him, or going to his home on August 18, 2015. He said he did not encounter Norman and D.A.C. that day because he was out stealing a vehicle and selling drugs during that time. Defendant also denied being at D.A.C.'s apartment on August 20, 2015, and he denied harming D.A.C. when he was at the apartment on August 21, 2015.

In the prosecution resulting from these facts (Siskiyou County Superior Court, case No. 15-1148), a jury convicted defendant of two counts of domestic violence (§ 273.5, subd. (a) -- counts 1 & 9), three counts of criminal threats (§ 422, subd. (a) -- counts 2, 10, & 11), two counts of false imprisonment by violence or menace (§ 237, subd. (a) -- counts 3 & 6), two counts of assault with force likely to produce

5

great bodily injury (§ 245, subd. (a)(4) -- counts 4 & 8), one count of intimidating a witness (§ 136.1 -- count 5), one count of assault with a deadly weapon (§ 245, subd. (a)(1) -- count 7), two counts of child abuse (§ 273a, subd. (b) -- counts 12 & 13), and one count of resisting arrest (§ 148, subd. (a) -- count 14).

In a separate, companion case (Siskiyou County Superior Court case No. 15-1344), defendant pleaded guilty to two counts of unlawful taking of a vehicle (Veh. Code, § 10851), one count of identity theft (§ 530.5, subd. (a)), and eight misdemeanors.

The trial court sentenced defendant on both cases together, imposing a total of 45 years eight months.[2]

We provide additional facts and procedure in the discussion of defendant's contentions on appeal.

## DISCUSSION

## I

Defendant contends the evidence was insufficient to support several of the convictions.

"On appeal, the test of legal sufficiency is whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt. [Citations.] Evidence meeting this standard satisfies constitutional due process and reliability concerns. [Citations.] [¶] While the appellate court must determine that the supporting evidence is reasonable, inherently credible, and of solid value, the court must review the evidence in the light most favorable to the [judgment], and must presume every fact the jury could reasonably

---

[2] The trial court issued an amended abstract of judgment on May 18, 2021, reflecting a correction in the calculation of presentence custody credits. Defendant does not suggest this raises an issue on appeal.

6

have deduced from the evidence." (*People v. Boyer* (2006) 38 Cal.4th 412, 479-480 (*Boyer*).)

A

Defendant contends the criminal threat conviction in count 2 must be reversed because he did not make a verbal threat.

"Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison." (§ 422.) "[A] threat made through nonverbal conduct falls outside the scope of section 422 as currently written." (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1147 (*Gonzalez*).)

On the date in question, defendant waved a gun around and pointed it at D.A.C. He punched D.A.C. in the side and kicked her in the shins. He laughed and joked, but there was no evidence of what he actually said.

The prosecutor elected to rely on the incident when defendant pulled out the gun and pointed it at D.A.C. The prosecutor acknowledged that D.A.C. could not remember exactly what defendant said on that occasion but reminded the jury that defendant had threatened D.A.C. in the past.

As the prosecutor acknowledged, there was no evidence of what defendant actually said during the incident when he waved the gun around and pointed it at D.A.C. Without such evidence, there is no verbal threat shown.

7

On appeal, the Attorney General argues there was sufficient evidence of a verbal threat. He writes: "[Defendant's] conduct here was not strictly limited to nonverbal conduct. Rather, while pointing the gun at D.A.C., [defendant] was laughing and joking, and even pretended to fire." But with no evidence of what defendant said, other than the generality that he was "laughing and joking," there was no evidence of a verbal threat. Granted, there was plenty of evidence that defendant desired to communicate a threat to D.A.C. But, as noted, "a threat made through nonverbal conduct falls outside the scope of section 422 as currently written." (*Gonzalez, supra*, 2 Cal.5th at p. 1147.)

There was no evidence of a verbal threat when defendant was brandishing the firearm. Therefore, we must reverse defendant's conviction for a criminal threat in count 2.

Because we conclude there was no verbal threat to support the conviction for a criminal threat in count 2, we need not consider other arguments defendant makes concerning the sufficiency of the evidence as to that count.

B

Defendant contends the criminal threat conviction in count 11, relating to the threat against Norman P., must be reversed because the threat did not convey an immediate prospect of execution.

In evaluating the sufficiency of the threat under section 422, we must determine whether the threat was "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat . . . ." (§ 422.) "The use of the word 'so' indicates that unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim. The four qualities are simply the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim."

8

(*People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1157-1158 (*Stanfield*).) Furthermore, "a jury can properly consider a later action taken by a defendant in evaluating whether the crime of making a [criminal] threat has been committed. . . . [A]ll of the circumstances can and should be considered in determining whether a [criminal] threat has been made. [T]he threatening statement does not have to be the sole cause of the victim's fear and . . . a statement the victim does not initially consider a threat can later be seen that way based upon a subsequent action taken by a defendant . . . ." (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1014 (*Solis*); see also *People v. Martinez* (1997) 53 Cal. App. 4th 1212, 1221 (*Martinez*).)

Defendant argues the evidence of the threat to Norman P. to burn down his house and kill him was insufficient because, at the time the threat was made, it did not convey to Norman an immediate prospect of execution. But defendant's view of the circumstances is unnecessarily limited. Norman, at the time defendant made the threat, may not have believed defendant would carry out the threat because Norman did not think defendant knew where he lived, but Norman's state of mind changed when defendant showed up at Norman's residence just 45 minutes to an hour later. These circumstances supported a finding that the threat, in the words of that statute, were "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat . . . ." (§ 422.)

In *Solis*, the defendant called the victim and said he was on his way to the victim's house and was going to kill her. Answering a jury question, the trial court "told the jury that the threatening statement does not have to be the sole cause of the victim's fear for her safety and that a statement the victim does not initially consider a threat can later be considered a threat because of a subsequent action or event." (*Solis, supra*, 90 Cal.App.4th at pp. 1012-1013.) On appeal, the court held this answer was accurate

9

because the jury can properly consider subsequent actions when deciding whether a statement was a criminal threat. (*Id*. at p. 1014.)

Defendant disagrees with *Solis*, arguing that it expanded on, rather than merely echoing, previous authority. But as noted, the four qualities of unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim (*Stanfield, supra*, 32 Cal.App.4th at pp. 1157-1158), and the jury may consider subsequent actions in making this determination (*Martinez, supra*, 53 Cal.App.4th at p. 1221). Here, the entirety of the circumstances supported the criminal threat conviction because, even though Norman P. may not have believed the threat at first, he believed it later based on defendant's actions. The threats, when considered with defendant's actions, were sufficiently unequivocal, unconditional, immediate, and specific to convey to Norman a gravity of purpose and an immediate prospect that defendant would burn down Norman's house and kill him.

C

Defendant contends the evidence does not support a conviction for felony false imprisonment in count 3 because there was no evidence of violence or menace.

"Section 236 defines misdemeanor false imprisonment as 'the unlawful violation of the personal liberty of another.' It is punishable as a felony if 'effected by violence, menace, fraud, or deceit.' (§ 237, subd. (a).) Force is an element of both misdemeanor and felony false imprisonment, but to elevate the crime to a felony, the force used must be 'greater than that reasonably necessary to effect the restraint.' [Citation.]" (*People v. Newman* (2015) 238 Cal.App.4th 103, 108 (*Newman*).) " 'Violence' in the statute means the exercise of physical force 'greater than that reasonably necessary to effect the restraint.' [Citations.] 'Menace' is an express or implied threat of force. [Citation.]" (*Ibid.,* italics omitted.)

10

Felony false imprisonment, as alleged in count 3, was based on defendant's actions on August 20, 2015, when he entered D.A.C.'s home through the bedroom window, blocked D.A.C. from leaving her bedroom, and later blocked D.A.C. from leaving the apartment. In making his argument that there was no menace, defendant cites only the events of that day. However, defendant's past actions against D.A.C. were also relevant to establishing that defendant falsely imprisoned D.A.C. by menace.

For years before the incident on August 20, defendant committed violence and made threats against D.A.C. Just two days earlier, defendant angrily approached Norman P.'s car, demanding that everyone get out, trying to grab Norman's car keys, and threatening to burn down Norman's house and kill him, and he later showed up at Norman's house, again angrily making threats. On August 20, D.A.C. refused to let defendant enter the apartment, so he entered D.A.C.'s bedroom through a window, with a gun, scaring D.A.C. Defendant prevented D.A.C. from leaving the bedroom, and D.A.C. threatened to jump out the window. Eventually, defendant and D.A.C. moved to the living room. Defendant, holding the gun, punched D.A.C. in the back and in the side, knocking the wind out of her and causing soreness. He also kicked her in the shins a couple times, causing bruising. Defendant waved the gun around, pointed it at D.A.C., and pretended to shoot at her. Finally, defendant stood by the door from the living room to outside, preventing D.A.C. from leaving with the children. Defendant physically blocked the door.

Defendant asserts there was no violence or menace because the force he used was no greater than reasonably necessary to stop D.A.C. from leaving the bedroom and the living room. We disagree. While there appears to be no evidence that, at the time defendant blocked D.A.C.'s escape, defendant physically touched D.A.C., threatened her verbally, or pointed the gun at her, the evidence of menace in preventing her from leaving was substantial. Defendant had a history of assaulting and threatening D.A.C. He had recently exhibited his threatening demeanor in the incident with Norman P. He had a gun

11

in the apartment and pointed it at D.A.C. before blocking her escape from the living room.

"When a rational fact finder could conclude that a defendant's acts or words expressly or impliedly threatened harm, the fact finder may find that there is menace sufficient to make false imprisonment a felony. An express threat or use of a deadly weapon is not necessary." (*People v. Wardell* (2008) 162 Cal.App.4th 1484, 1491.) Here, the evidence of what happened on August 20, considered together with the evidence of defendant's prior violence and threats against D.A.C., was sufficient to support a jury finding that defendant used an implied threat of force (menace) to falsely imprison D.A.C. (*Newman, supra*, 238 Cal.App.4th at p. 108.) The evidence was therefore sufficient to support a conviction for felony false imprisonment as charged in count 3.

D

Defendant argues the evidence was insufficient to support a finding that his assault on D.A.C. in count 4 on August 20, 2015 was with force likely to produce great bodily injury.

"Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm [or by any means of force likely to produce great bodily injury] shall be punished by imprisonment . . . ." ( § 245, subd. (a)(1); see *id.*, subd. (a)(4).) " 'The crime . . . like other assaults, may be committed without infliction of any physical injury, and even though no blow is actually struck. [Citation.] The issue, therefore, is not whether serious injury was caused, but whether the force used was such as would be likely to cause it.' [Citations.]" (*People v. Covino* (1980) 100 Cal.App.3d 660, 667.) The question of whether a particular act is likely to produce great bodily injury is a question for the trier of fact and is subject to review for substantial evidence. (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1065.) A defendant's use of

12

his hands alone may support a conviction of assault by means of force likely to produce great bodily injury. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.)

The facts relied on by the prosecution for count 4 occurred on August 20, 2015, when defendant punched D.A.C. in the back and side. D.A.C. testified that defendant punched her in the back and in the side, knocking the wind out of her. She did not have bruising from being punched, but it was sore. The soreness lasted a couple of days.

Defendant claims this evidence was insufficient to establish force likely to produce great bodily injury because D.A.C. did not testify about whether defendant hit D.A.C. with a closed fist or open hand, D.A.C. did not testify about whether it was a light or hard blow, there were only two blows at most, D.A.C. did not testify that she suffered pain, there was no bruising, and D.A.C. did not seek medical treatment for the injury. Defendant concludes: "In this case, one or two punches that left no bruises and only minimal soreness constitute insufficient evidence of force likely to produce great bodily injury."

We disagree both with defendant's characterization of the assault and with his conclusion that it was insufficient to support a finding of force likely to produce great bodily injury. D.A.C. testified that defendant "punched" her in the back and side. From this the jury could reasonably infer that defendant struck D.A.C. with a closed fist, the common meaning of "punched." The punches knocked the wind out of D.A.C. From this the jury could reasonably infer that defendant delivered two hard blows to D.A.C., making it hard for her to breathe. The jury could also reasonably infer that the punches were painful. Thus, defendant's characterization of the assault is inconsistent with the standard for reviewing the sufficiency of the evidence -- a standard that requires us to consider the evidence in the light most favorable to the verdict. (*Boyer, supra*, 38 Cal.4th at pp. 479-480.)

Furthermore, the jury could reasonably conclude that defendant's punching of D.A.C. with considerable force in the back and side, enough to actually cause difficulty

13

in breathing and lasting soreness, was use of force likely to produce great bodily injury. " 'The statute prohibits an assault by means of force *likely* to produce great bodily injury, not the use of force which does *in fact* produce such injury. While . . . the results of an assault are often highly probative of the amount of force used, they cannot be conclusive.' (*People v. Muir* (1966) 244 Cal.App.2d 598, 604, italics in original.)" (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1065-1066.) Defendant's hard blows to D.A.C.'s back and side could have damaged internal organs or bones. While they apparently did not cause such damage, defendant is not to be rewarded for that fortuity. The evidence was sufficient to sustain the verdict on count 4.

## II

Defendant contends the trial court erred by not giving the jury a unanimity instruction relating to felony false imprisonment as charged in counts 3 and 6.

The prosecution charged the events of August 20, 2015, as false imprisonment in count 3 and the events of August 21 to August 22, 2015, as false imprisonment in count 6. On August 20, defendant entered D.A.C.'s apartment through the bedroom window and, first, blocked D.A.C.'s exit from the bedroom, and, later, blocked her from leaving the living room. On August 21 to August 22, defendant blocked the door to the outside from the living room, pushed D.A.C. back down in a chair after she tried to stand up in the kitchen, dragged her by the hair down the hallway to a bedroom, and held her down when she tried to get up while they were having sex in the bedroom. Accordingly, there were multiple acts constituting false imprisonment as alleged in counts 3 and 6.

"In California, a jury verdict in a criminal case must be unanimous. [Citation.] Thus, our Constitution requires that each individual juror be convinced, beyond a reasonable doubt, that the defendant committed the specific offense he is charged with. [Citations.] Therefore, when the evidence suggests more than one discrete crime, either (1) the prosecution must elect among the crimes or (2) the trial court must instruct the jury that it must unanimously agree that the defendant committed the same criminal act.

14

[Citations.] The unanimity instruction must be given sua sponte, even in the absence of a defense request to give the instruction. [Citations.]" (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 569 (*Hernandez*).)

However, the trial court need not give a unanimity instruction when multiple acts constituting the offense are part of a continuing course of conduct. (*Hernandez, supra*, 217 Cal.App.4th at p. 572.) "[A] unanimity instruction is not ' "required when the acts alleged are so closely connected as to form part of one continuing transaction or course of criminal conduct," ' or ' " 'when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them.' [Citations.]" [Citation.]' [Citations.]" (*Ibid.*)

Here, defendant's acts on August 20, 2015, relating to count 3, were committed in a continuing course of criminal conduct. Likewise, his acts on August 21 to August 22, 2015, relating to count 6, were committed in a continuing course of criminal conduct. Further, as to count 3, the defense was that defendant did not go to D.A.C.'s apartment on August 20, 2015. And as to count 6, defendant denied committing the acts. Therefore, defendant offered the same defense (not there) for the acts supporting the charge in count 3 and the same defense (did not do it) for the acts supporting the charge in count 6. Under these circumstances, there was no reason for the jurors to disagree on what acts defendant committed and there was no need for a unanimity instruction. (*Hernandez, supra*, 217 Cal.App.4th at p. 572.) Also, defendant gives us no reason on appeal to believe the jury could have concluded defendant committed some of the acts constituting false imprisonment as to each count but not others.

Defendant argues the continuing-course-of-conduct exception to the unanimity-instruction requirement does not apply here because the various acts supporting each count were "separate and distinct." Whether the acts are "separate and distinct," however, is not the test for determining whether there was a continuing course of criminal conduct. While a unanimity instruction is necessary if the acts are "separated by

15

time and space" (*Hernandez, supra,* 217 Cal.App.4th at p. 574), there was no such separation here because the acts took place for count 3 while defendant was in D.A.C.'s apartment on August 20, 2015, and for count 6 while defendant was in D.A.C.'s apartment continuously on August 21 to August 22, 2015. Furthermore, as noted, defendant did not assert separate defenses for the various act constituting false imprisonment. The trial court therefore did not err.

III

Defendant contends the prosecutor committed misconduct on several occasions during trial. Recognizing, however, that defense counsel did not object to any of the conduct based on prosecutorial misconduct grounds and request a curative admonishment to the jury, defendant also contends defense counsel violated his constitutional right to effective counsel by failing to object.

" 'A defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety.' [Citation.] A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel. The appellate record, however, rarely shows that the failure to object was the result of counsel's incompetence; generally, such claims are more appropriately litigated on habeas corpus, which allows for an evidentiary hearing where the reasons for defense counsel's actions or omissions can be explored. [Citation.]

" 'In order to establish a claim of ineffective assistance of counsel, defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it "fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms." [Citations.] Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy."

16

[Citation.] If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." [Citations.] If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [Citation.]' [Citation.]" (*People v. Lopez* (2008) 42 Cal.4th 960, 966 (*Lopez*).)

Before trial, the prosecutor moved to impeach defendant, if he testified, with prior convictions and conduct involving moral turpitude. The prior convictions were for second degree burglary in 1993, assault with a firearm on a police officer in 1995, possession of a deadly or dangerous weapon in 2000, and being a convicted felon in possession of a firearm in 2009, as well as the counts in the companion case (Siskiyou County Superior Court case No. 15-1344), to which defendant had already pleaded guilty. The trial court reserved a ruling on the admissibility of the prior convictions for later, but it also noted that the defense might open the door to using the prior convictions other than just for general impeachment. During trial, the trial court and counsel again discussed how the prior convictions could be used. It was agreed that, except for the counts in the companion case, the prior convictions would be referred to as crimes of moral turpitude. The trial court noted, however, that the defense could elicit specifics about the offenses and that the prosecution might have more leeway to do the same if the door was opened by the defense. The prosecutor asked if the trial court wanted the prosecutor to raise, in a sidebar conference, whether she could go into specifics, and the trial court said they should "touch base at sidebar on those things before you go forward."

During defense counsel's direct examination of defendant, defendant claimed he did not have a gun at D.A.C.'s apartment on August 20, 2015. Defendant also testified

17

he had never taken any of the cases resulting in his prior convictions to trial but instead admitted those crimes. On cross-examination, the prosecutor not only asked about whether defendant had prior convictions but also asked about the circumstances of those crimes, specifically asking whether defendant possessed firearms in the past and whom he shot. Defense counsel objected to the questions of what defendant did with the firearm and whom he shot, and the trial court sustained the objections. Because defendant had testified that he admitted to his prior crimes, the prosecutor established through questioning that defendant had at first denied possessing a firearm but later admitted it in court. In a later discussion outside the presence of the jury, the prosecutor said that she believed defendant had opened the door to questioning him on the circumstances of the prior convictions involving possession of a firearm and about admitting the prior crimes. The prosecutor also claimed defendant had testified that, when he possessed the firearm relative to the 2009 conviction for being a felon in possession of a firearm, he "didn't do anything with [the firearm]," and thereby made a false representation.

Concerning the prosecutor's cross-examination of defendant, defendant asserts the prosecutor committed misconduct by questioning defendant about the facts underlying his prior convictions, attempted to elicit inadmissible propensity evidence and evidence that was unduly prejudicial, misrepresented defendant's testimony about whether he did anything with the firearm relative to the 2009 conviction, and persisted in trying to elicit inadmissible evidence even after the trial court had sustained defense objections and asked the prosecutor to move on to other subjects.

During closing argument, the prosecutor told the jury that the law does not allow the jury to consider unreasonable evidence. Concerning closing argument, defendant asserts the prosecutor committed misconduct by telling the jury it could not consider unreasonable evidence because that limitation applies only to circumstantial evidence.

18

(See CALCRIM No. 224 [jury must reject unreasonable interpretations of circumstantial evidence].)

Defendant argues extensively that the prosecutor committed misconduct in the way that she cross-examined defendant and argued to the jury. However, defense counsel did not object to this conduct as prosecutorial misconduct and likewise did not ask the trial court to admonish the jury to disregard the perceived impropriety. Consequently, defendant forfeited appellate consideration of whether the prosecutor committed misconduct.[3] (*Lopez, supra*, 42 Cal.4th at p. 966.) We therefore move directly to a consideration of whether defense counsel violated defendant's right to effective assistance of counsel. In doing so, we note that we need not determine whether defense counsel's representation was deficient if there was no prejudice, even assuming deficient representation. (*Strickland v. Washington* (1984) 466 U.S. 668, 697 [80 L.Ed.2d 674].) "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." (*Ibid.*)

While defendant argues extensively that the prosecutor committed misconduct, defendant makes only a limited argument that defense counsel's representation caused prejudice. He argues his testimony was credible that he was not at D.A.C.'s apartment on August 20th and August 21st because he was selling drugs, stealing and crashing a truck, and avoiding police; his testimony was forthright in its admission of other offenses. But he claims the prosecutor's improper inquiry regarding the priors attacked defendant's credibility and persuaded the jury to infer improperly that defendant had a disposition for

---

[3] In a footnote in his reply brief, defendant generally asserts for the first time on appeal that requesting an admonition to the jury concerning what defendant now claims was prosecutorial misconduct would have been futile because the damage had already been done. Raising such an argument for the first time on appeal in a footnote in a reply brief is insufficient to merit the court's consideration. (*People v. Tully* (2012) 54 Cal.4th 952, 1075.)

19

violence and a propensity to commit the offenses in this case. Defendant further claims at least one juror may have had a reasonable doubt based on defendant's alibi testimony if the prosecutor had not told the jury that it could not consider unreasonable evidence.

We are not persuaded. The record indicates defendant was not a credible witness. He claimed not to have been at D.A.C.'s apartment on August 20, 2015, and not to have injured D.A.C. on August 21 and 22, 2015, and yet the evidence was clear that defendant had been out of control during that period, threatening Norman P. on August 18, following D.A.C. to Norman's house, and menacing D.A.C. at her apartment. D.A.C. ran to a neighbor's apartment on August 22, battered, bleeding, and upset. Defendant's denials were simply not credible, regardless of whether the jury knew the circumstances of defendant's 20-year-old conviction for assault on a police officer and regardless of whether the prosecutor told the jury it could not consider unreasonable evidence. This was not a close case on credibility issues. Therefore, defendant fails to establish prejudice and, consequently, his contention that defense counsel violated his right to effective assistance of counsel is without merit.

IV

The trial court imposed two one-year terms for defendant's prior prison terms under section 667.5, subdivision (b). Defendant contends we must strike the two one-year terms because the statute has been amended to eliminate those terms.

Signed by the Governor on October 8, 2019, and effective January 1, 2020, Senate Bill No. 136 amends section 667.5, subdivision (b), to eliminate the one-year prior prison term enhancement for most prior convictions. (Sen. Bill No. 136 (2019-2020 Reg. Sess.), Stats. 2019, ch. 590, § 1.) An exception, not applicable here, is made for a qualifying prior conviction on a sexually violent offense, as defined in Welfare and Institutions Code section 6600, subdivision (b).

The parties agree that the amendment is retroactive and that we must strike the two one-year prior prison term enhancements imposed under former section 667.5,

20

subdivision (b) because they are no longer authorized. We also agree and will strike the two one-year terms. (*People v. Smith* (2020) 46 Cal.App.5th 375, 396.)

V

The trial court imposed a five-year term under section 667, subdivision (a)(1) because defendant had a prior serious felony conviction (the 1995 conviction for assault with a firearm on a police officer). Defendant contends we must remand to provide the trial court an opportunity to exercise its discretion concerning whether to strike or dismiss defendant's prior serious felony conviction under section 667, subdivision (a)(1).

"On September 30, 2018, the Governor signed Senate Bill [No.] 1393 which, effective January 1, 2019, amends sections 667[, subdivision] (a) and 1385[, subdivision] (b) to allow a court to exercise its discretion to strike or dismiss a prior serious felony conviction for sentencing purposes. (Stats. 2018, ch. 1013, §§ 1-2.)" (*People v. Garcia* (2018) 28 Cal.App.5th 961, 971.) In cases in which Senate Bill No. 1393 was enacted after sentencing, it is appropriate to remand to the trial court for an exercise of discretion under the amended statutes. (*Id*. at p. 973.)

As does the Attorney General, we agree the sentence must be vacated and the matter must be remanded to the trial court to exercise its discretion under Senate Bill No. 1393 on whether to strike, for purposes of section 667, subdivision (a)(1), defendant's prior serious felony conviction allegation and to resentence defendant.

VI

Defendant contends his admissions to the prior conviction allegations were not knowing, intelligent, and voluntary because the trial court did not advise him of his constitutional rights against self-incrimination, to confront his accusers, and to a jury trial on the allegations, and did not advise defendant of the full penal consequences of his admissions.

When accepting a defendant's admissions to prior conviction allegations, the trial court must advise the defendant of the " 'right to confrontation, to a jury trial, and against

21

self-incrimination, as well as the nature of the charge and the consequences of his plea.' " (*People v. Lloyd* (2015) 236 Cal.App.4th 49, 57, quoting *In re Tahl* (1969) 1 Cal.3d 122, 132; see *In re Yurko* (1974) 10 Cal.3d 857, 863 (*Yurko*).)  For a waiver of the constitutional rights to be valid, it must be knowing, intelligent, and voluntary.  (*Boykin v. Alabama* (1969) 395 U.S. 238, 243 & fn. 5 [23 L.Ed.2d 274].)  The lack of express advisement and waiver of each of the constitutional rights constitutes reversible error unless "the record affirmatively shows that [the admissions were] voluntary and intelligent under the totality of the circumstances."[4]  (*People v. Howard* (1992) 1 Cal.4th 1132, 1175; see *People v. Mosby* (2004) 33 Cal.4th 353, 360 (*Mosby*).)

Before trial, the trial court advised defendant of his right to a jury trial on the prior conviction allegations and defendant waived that right.  However, when the trial court took defendant's admissions to the prior conviction allegations after the jury trial, it did not advise defendant of the full penal consequences of the admissions or of his constitutional rights to confront his accusers and against self-incrimination.

In the companion case (Siskiyou County Superior Court case No. 15-1344), defendant pleaded guilty to the charges.  On September 27, 2016, in connection with the plea, defendant was advised of his right against self-incrimination, to confront his accusers, and to a jury trial.  He was also advised of the full penal consequences of that plea in that companion case.  Two years later, on September 26, 2018, defendant admitted the prior conviction allegations in this case.  He was represented by counsel. He had already been advised of his right to a jury trial on the prior conviction allegations.

---

**4** The Attorney General argues that defendant forfeited the right to have the trial court advise him of the full penal consequences of the admission, which is not a constitutional right, because he failed to object on that basis in the trial court.  However, forfeiture applies only when the failure to advise of penal consequences is the sole advisement error.  (*People v. Walker* (1991) 54 Cal.3d 1013, 1022-1023.)  Here, it was not the sole advisement error.

22

The admissions were taken immediately after jury trial, during which defendant was afforded the opportunity to confront his accusers. And defendant has extensive experience in the criminal justice system, having prior convictions in 1993, 1995, 2000, and 2009. Considering the totality of these circumstances, we conclude defendant's admissions to the prior conviction allegations were knowing, intelligent, and voluntary. (*Mosby, supra*, 33 Cal.4th at p. 360.)

Defendant attempts to distinguish this case from *Mosby*, which considered almost identical circumstances and found that the admissions were knowing, intelligent, and voluntary. In that case, defendant exercised his right to remain silent by not testifying at trial (*Mosby, supra*, 33 Cal.4th at p. 364), while in this case defendant testified. That difference, alone, is not sufficient to conclude, in this case, that the defendant's admissions were not knowing, intelligent, and voluntary. We therefore conclude defendant's contention is without merit.

VII

In supplemental briefing, defendant contends the amendments to section 1170 in Senate Bill 567 concerning imposing upper-term sentencing require us to vacate the sentence and remand for resentencing. Because we have already determined in Part V of the discussion that the sentence must be vacated and the matter remanded for resentencing, we will simply direct the trial court to comply with the new sentencing provisions in Senate Bill 567.

Senate Bill 567, which amended section 1170, now makes the middle term the presumptive term and limits a trial court's ability to impose an upper term of imprisonment to circumstances in which the facts supporting the upper term were stipulated to by the defendant or found true by the jury. (§ 1170, subd. (b)(1) & (2).)

The newly-enacted amendments also allow the trial court to rely on certified records showing prior convictions.[5]  (§ 1170, subd. (b)(3).)

In this case, the trial court imposed on the count 2 conviction for criminal threat the upper term of three years, doubled to six years for a prior strike conviction.  The trial court also imposed the upper term of 10 years for the firearm enhancement associated with count 2.  (§ 12022.5, subd. (a).)  As aggravating factors, the trial court said it was relying on "the degree of violence . . . and . . . a number of factors that were submitted by probation."  The trial court also said it was adopting the factors in aggravation submitted by the prosecution.

Defendant is entitled to any ameliorative effect of Senate Bill 567 because his conviction was not final as of the date the new law took effect, which was January 1, 2022.  (*In re Estrada* (1965) 63 Cal.2d 740.)

Accordingly, we will direct the trial court on remand to sentence defendant consistent with the provisions of section 1170, subdivision (b) added by Senate Bill 567.

---

[5]  Section 1170, subdivision (b) now provides:

"(1) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2).

"(2) The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. . . .

"(3) Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury.  This paragraph does not apply to enhancements imposed on prior convictions."

DISPOSITION

The conviction for a criminal threat as alleged in count 2 is reversed. The two one-year terms imposed under section 667.5, subdivision (b) are struck. The sentence is vacated, and the matter is remanded to the trial court to exercise its discretion under section 667, subdivision (a)(1) and for resentencing consistent with the newly-enacted provisions of section 1170, subdivision (b).

                                              /S/
                                     MAURO, J.


We concur:


    /S/
ROBIE, Acting P. J.


    /S/
KRAUSE, J.